[No. B168144. Second Dist., Div. Eight. Apr. 13, 2005.]

KWESI AMOAFO YEBOAH, Plaintiff and Appellant, v.
PROGENY VENTURES, INC., et al., Defendants and Appellants.

444

**COUNSEL**

Kwasi A. Asiedu and Stephen K. Lubega for Plaintiff and Appellant.

Klass, Helman & Ross and Robert M. Ross for Defendants and Appellants.

## OPINION

**FLIER, J.**—The parties purport to appeal, and to cross-appeal, from orders that are not appealable. We dismiss the appeals and the cross-appeal.

## FACTS

The issues that arise in this purported appeal are based on the provisions of a "modified judgment" that was entered on April 28, 2000. The "modified judgment," a complex document 19 pages long, is based on a series of stipulations entered into by the parties to this appeal. Because we conclude below that the "modified judgment" is not a final judgment, we will refer to it as the "interlocutory judgment."

The interlocutory judgment recites a number of facts which are foundational to the issues that are raised in this purported appeal. According to the interlocutory judgment, appellant Progeny Ventures, Inc. (Progeny), established agency agreements, or service contracts, between Western Union Financial Services, Inc. (Western Union—not a party hereto), and various financial institutions in Africa. Kwesi Amoafo Yeboah was instrumental in establishing these agency agreements.

The interlocutory judgment identifies six service contracts (collectively service contracts) between Western Union and financial institutions in Ethiopia, Uganda, Kenya, Eritrea, Ghana and Nigeria that were entered into in 1994 and 1995. The interlocutory judgment provides that Yeboah is to receive 23.6 percent of the gross profits generated by the service contracts, and that Progeny is to receive the balance of gross profits, or 76.4 percent. The gross profits are defined as sums paid to Progeny under the service contracts, and appear to be commissions generated by these contracts.

The interlocutory judgment provides that Yeboah relinquishes all claims to Progeny, and that Kofi Amoah is the owner of Progeny.

The interlocutory judgment further provides that Yeboah is to receive his share of the gross profits on a monthly basis, and that these payments are to continue as long as the service contracts continue to be in effect between Western Union and the specified six African financial institutions. The interlocutory judgment states that, in order to determine the gross profits generated by the service contracts, one of several major accounting firms is to be appointed to conduct annual audits. The interlocutory judgment contains a detailed mechanism to deal with disputes and any failures of the parties to live up to the provisions of the judgment. The interlocutory judgment also

provides in paragraph 21 that any dispute relating to any accounting or to payments due under the judgment shall be referred to a retired judge as a special master.

On January 26, 2001, the trial court appointed Judge Sherman Smith, Jr. (retired), to serve as a special master under paragraph 21 of the modified judgment. The order appointing Judge Smith as special master states that he is to serve as special master "to adjudicate disputes and matters relating to the auditing, accounting and payments due under the Modified Judgment."

On April 8, 2003, the special master signed an "Amended Report of Referee re: Vista's[1] Demand for the Payment of Penalties and Interest from the Second Accounting Period." The report found that Progeny was required to pay Yeboah $32,050.80 in interest and penalties for late payments made by Progeny. The referee also found that Progeny owed Yeboah, i.e., Yeboah's assignee Vista, an additional $207,199.73 generated by the service contract with a bank located in Kenya. In making this determination, the referee rejected Progeny's claim that it received only 60 percent of the $2,046,020 generated by this service contract because 40 percent of this sum was paid as attorney's fees to the lawyers who obtained this recovery from the bank in Kenya. (Progeny paid Vista 23.6 percent of 60 percent of $2,046,020.)

The referee's report was signed and served on April 8, 2003. On May 13, 2003, the trial court signed an "Order" endorsed on the report that stated that "[a]ll matters set forth in the above Report having been duly considered, the court hereby approves and adopts said Report, including the findings and recommendations therein, and adopts the same as a decision of the court."

On June 17, 2003, Progeny filed a "Notice of Appeal" that stated that Progeny appealed the decision of the superior court entered on May 13, 2003. On July 9, 2003, Yeboah and Vista Equities, Inc., filed a notice of appeal that purported to "cross-appeal" from the trial court's order of May 13, 2003.

On June 16, 2003, another hearing was held before retired Judge Smith sitting as a special master. On July 8, 2003, Judge Smith signed a report in which he awarded certain sums to Vista, Yeboah's assignee. Progeny filed objections to this report on July 18, 2003. However, the court approved the report on August 13, 2003. Progeny filed a notice of appeal, purporting to appeal from the court's order approving the special master's report.

---

[1] Vista Equities, Inc., appears to be Yeboah's assignee.

## DISCUSSION

1. *The "Modified Judgment" Is Not a Final, But an Interlocutory Judgment*

█ "An important question in accounting actions is whether the first judgment or order determining the right to an accounting and ordering it taken is *appealable*." (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 14, p. 550.) An early case, *Zappettini v. Buckles* (1914) 167 Cal. 27, 33 [138 P. 696], held that when no judicial act is left to be performed after an accounting has been ordered, the judgment dissolving the partnership and ordering an accounting was final. However, it was thereafter held that when the court also orders a reference for the accounting, the order is interlocutory, and not a final judgment. (*Gunder v. Gunder* (1929) 208 Cal. 559, 561–562 [282 P. 794].) Reference to a master or referee is the factor that makes the first judgment interlocutory. (*Ibid.*; 7 Witkin, *supra*, § 15, p. 551 [citing authorities].) When there has been a reference, further judicial action is required in approving or disapproving the report of the referee or master. The rule therefore is that when, as here, further judicial action is required after an accounting has been ordered, the initial order directing an accounting is interlocutory. (*Rose v. Boydston* (1981) 122 Cal.App.3d 92, 97 [175 Cal.Rptr. 836].)

█ The interlocutory judgment entered on April 28, 2000, resolved a number of issues between the parties, such as the ownership of Progeny, which is awarded by the judgment to Kofi Amoah. However, the interlocutory judgment did not resolve all the issues. The important issue of past and future payments was left for future determination and adjudication. Specifically, the interlocutory judgment establishes procedures and formulas that are to be used in the accounting of the "gross proceeds," 23.6 percent of which are to be paid to Yeboah. The interlocutory judgment provides for an audit covering August 1, 1999, through July 31, 2000, and annual audits thereafter of the gross proceeds. The interlocutory judgment also makes provision for the appointment of a special master in the event that any disputes arise over the accounting. As we have seen, the court appointed retired Judge Smith to serve as a special master to resolve disputes arising from the accounting performed up to that point. The court then acted on the report of the special master on May 13, 2003, by approving it.

█ The events that took place after April 28, 2000 (see text, *ante*), make it clear that the judgment entered on April 28, 2000, was an interlocutory judgment. "An interlocutory judgment or order is a provisional determination of some or all issues in the cause." (7 Witkin, Cal. Procedure, *supra*, Judgment, § 12, p. 548.) The interlocutory judgment entered in this case is

one of three types recognized by Witkin. According to Witkin, one type of an interlocutory judgment is "[w]here the ultimate judgment will be unconditional, but basic issues of law must be determined before evidence is heard and a final judgment rendered; e.g., an interlocutory order determining the right to an accounting, then taking of the account and judgment for the amount found due [citation]." (*Id.* at pp. 548–549.) An interlocutory order or judgment has two characteristic features: It is not final for purposes of appeal, and is also not final in the trial court, when it may be modified after further evidence or law has been considered. (*Id.* at p. 549.)

### 2. The Purported Appeals from the Trial Court's Order of May 13, 2003, Must Be Dismissed

Neither Progeny, nor Yeboah in its purported cross-appeal, complied with rule 14(a)(2)(B) of the California Rules of Court, which requires an appellant, including a cross-appellant, to state that the judgment appealed from is final, or explain why the order appealed from is appealable. Our independent review of the record disclosed that the order entered on May 13, 2003, may not be an appealable order. Since this issue was not briefed, we issued a letter pursuant to the provisions of Government Code section 68081 stating that we were considering the question whether the order of May 13, 2003, was appealable, and we invited the parties to state their views on this matter. Both parties did so. In essence, the parties reason that the order of May 13, 2003, was an order entered after judgment that affects the substantial rights of the parties, and is therefore appealable.

As it appears from part 1 of this opinion, the premise of the parties, that the "modified judgment" entered on April 28, 2000, is a final judgment, is in error. That judgment is an interlocutory judgment. It follows therefore that the order of May 13, 2003, was not an order entered after a final judgment. Like the interlocutory judgment of April 28, 2003, the order of May 13, 2003, is interlocutory and is not appealable.

Nor can it be said that the order of May 13, 2003, is appealable as a collateral order.[2] The order appointing Judge Smith as special master is a *special reference* to ascertain certain facts, i.e., matters relating to the

---

[2] "A necessary exception to the one final judgment rule is recognized where there is a final determination of some *collateral matter* distinct and severable from the general subject of the litigation. If, e.g., this determination requires the aggrieved party immediately to *pay money or perform some other act,* he is entitled to appeal even though litigation of the main issues continues. The determination is substantially the same as a final judgment in an independent proceeding." (9 Witkin, Cal. Procedure, *supra*, Appeal, § 60, p. 116.)

auditing, accounting and payments due under the interlocutory judgment.[3] "A voluntary reference may be a *special reference*, simply to ascertain some fact (C.C.P. 638(2)), or a *general reference* '[t]o try *any or all of the issues* in an action or proceeding, whether of *fact or of law,* and to report a *statement of decision thereon*' (C.C.P. 638(1))." (6 Witkin, Cal. Procedure, *supra*, Proceedings Without Trial, § 59, p. 458.)

■ When the reference is special, the referee's decision does not become the decision of the court until it is adopted by the judge. (Code Civ. Proc., § 644, subd. (b); 6 Witkin, Cal. Procedure, *supra*, Proceedings Without Trial, § 70, p. 468.) In fact, in the case of a special reference, the referee's report is only the first step. The court must determine "the facts and the law by rendering its decision containing its findings of fact and conclusions of law which serves as the basis for the judgment *which shall be entered*; and the judgment thus entered is in nowise dependent upon the report of the referee for support but is grounded on the decision of the court [citation]." (*National Brass Wks. v. Weeks* (1928) 92 Cal.App. 318, 321 [268 P. 412], italics added.)

■ The special reference has the effect of a special verdict. (Code Civ. Proc., § 645.) However, there is no appeal from a verdict. (*Sawyer v. Sunset Mutual Life Ins. Co.* (1937) 8 Cal.2d 492, 501 [66 P.2d 641]; *Bailey v. Simpson* (1963) 215 Cal.App.2d 532, 534 [30 Cal.Rptr. 701].) As noted in *National Brass Wks. v. Weeks, supra*, 92 Cal.App. at page 321, if the court adopts the referee's report, the court must enter a judgment to bring the matter to a conclusion. The court's order of May 13, 2003, was not a judgment and was therefore not a final determination.

Moreover, it cannot be said that the accounting, or the resolution of disputes over the accounting by the special master, is a collateral proceeding. The sole remaining object of the interlocutory judgment entered on April 28, 2003, is the management of the periodic accountings of the gross profits of this business venture. Thus, it cannot be said that the accountings rendered, and the resolution of disputes about the accountings, are collateral to the main object of the proceeding.

For these reasons, the order of May 13, 2003, does not qualify as a final determination of a collateral matter.

---

[3] Code of Civil Procedure section 638 provides in relevant part: "A referee may be appointed upon the agreement of the parties filed with the clerk, or judge, or entered in the minutes, or upon the motion of a party to a written contract or lease that provides that any controversy arising therefrom shall be heard by a referee if the court finds a reference agreement exists between the parties: [¶] (a) To hear and determine any or all of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision. [¶] (b) To ascertain a fact necessary to enable the court to determine an action or proceeding."

### 3. *The Order of August 13, 2003, Is Not an Appealable Order*

The order of August 13, 2003, is not appealable for the same reason that the order of May 13, 2003, is not appealable. It is not an order entered after a final judgment, since there has not been a final judgment in this case. However, timely objections were interposed to the special master's report of July 8, 2003.

It would appear that the appropriate procedure in this case is for the trial court to enter a final judgment in the matter. That final judgment should comprise the results of the accountings rendered up to the time of the entry of that judgment, including the orders of May 13, 2003, and August 13, 2003. We note in this connection that an approval of the referee's report is not the same as a judgment entered following the receipt of the referee's report. (See text, *ante*; *National Brass Wks. v. Weeks, supra,* 92 Cal.App. 318, 321.)

■ We note for the guidance of counsel that the briefs filed by both parties were defective in that they frequently failed to provide references to the record. Statements of facts not supported by references to the record may be disregarded as a violation of rule 14(a)(1)(C) of the California Rules of Court. (*Gotschall v. Daley* (2002) 96 Cal.App.4th 479, 481, fn. 1 [116 Cal.Rptr.2d 882].)

### DISPOSITION

Appellants' purported appeal, and respondent's purported cross-appeal, from the order of May 13, 2003, as well as the purported appeal from the order of August 13, 2003, are dismissed. The parties are to bear their own costs.

Rubin, Acting P. J., and Boland, J., concurred.

A petition for a rehearing was denied May 6, 2005, and the opinion was modified to read as printed above.