Filed 2/28/23  Garr v. Schmorleitz-Garr CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DIRK B. GARR, Respondent, v. ERIN SCHMORLEITZ-GARR, Appellant. | D078683 (Super. Ct. No. 18FL001100E) |


APPEAL from a judgment of the Superior Court of San Diego County, Frank L. Birchak, Judge.  Dismissed in part, affirmed in part, reversed in part and remanded with instructions.

Erin Schmorleitz-Garr, in pro. per., for Appellant.

Dirk B. Garr, in pro. per., for Respondent.


INTRODUCTION

Erin Schmorleitz-Garr (Wife) appeals a judgment in the dissolution proceedings regarding her marriage to Dirk B. Garr (Husband).  Wife

1

contends the trial court erred by finding that: (1) she was not credible; (2) certain real property was transmuted to Husband's separate property; (3) Husband did not breach his fiduciary duty when he liquidated his 401(k) account for necessities of life; and (4) she was not entitled to attorney fees as sanctions against Husband. She also contends the court was biased against her. We reject these contentions.

Wife also contends the trial court erred by ordering that she reimburse Husband for mortgage payments he made on his separate property during her post-separation stay, under Family Code[1] section 914, subdivision (b)(2), and for health insurance premiums he paid for her and her adult child. We conclude the trial court misapplied section 914, subdivision (b)(2), and reverse the order awarding Husband reimbursement of $7,721.48. We conclude the trial court's order regarding health insurance premiums is an interlocutory, non-appealable order and dismiss that claim for lack of jurisdiction. We affirm the judgment in all other respects.

FACTUAL AND PROCEDURAL BACKGROUND

The parties were married on April 11, 2016 and did not have any children from the marriage. Less than two years later on January 30, 2018, Husband filed a petition for dissolution of their marriage.[2] On February 23, Wife filed a response and asserted the parties' date of separation was January 23, 2018.

---

[1] All further undesignated statutory references are to the Family Code.

[2] During the proceedings, the parties were represented by counsel at various times and at other times proceeded as self-represented litigants. At trial, Wife was represented but Husband was not. In this appeal, both are self-represented litigants.

Over three days, the trial court conducted a trial on the parties' disputed issues, which included the date of separation, characterization and division of property, spousal support, credits and reimbursements, and sanctions pursuant to section 271. At the conclusion of trial, the court issued a 27-page written statement of decision detailing its findings and orders.

The trial court found both parties had "significant credibility problems." It determined the parties' date of separation was January 23, 2018, and dissolved their marriage as of March 10, 2020. Weighing the factors under section 4320—and finding the marital standard of living was lower middle class, the parties had not owned a home together, had experienced housing instability throughout their marriage, and had not accumulated significant assets—the court terminated jurisdiction over spousal support upon Husband's payment of a stipulated amount of $750 to Wife.

The trial court determined the property at Starlight Way in Julian, California (Starlight Way) was Husband's separate property. It made further orders, which we later discuss in detail, to divide personal property and community debts; award or deny credits and reimbursements; and set equalization payments. The net of the court's orders resulted in Wife owing Husband an equalizing payment of $3,197.65. Lastly, the court declined to award section 271 sanctions to either party. On December 31, 2020, the court entered a judgment of dissolution. Wife timely appealed.[3]

---

[3]    On February 15, 2023, the date of oral argument, Wife filed a request that we take judicial notice of certain records or other documentary evidence, consisting of 461 pages, that mostly involve matters that occurred after the December 31, 2020 judgment being appealed or matters not first presented to the trial court. We deny her request for judicial notice (RJN) for failure to comply with well-established rules regarding the filing of an RJN. (See Evid.

3

DISCUSSION

I.

*General Principles of Appellate Review*

Our review of Wife's contentions on appeal is limited by the standards and presumptions that involve substantial deference to the trial court on its discretionary decisions and its resolution of factual issues. We begin with the cardinal rule that the judgment is presumed correct and all ambiguities are resolved in favor of affirmance. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*).)

As the party seeking reversal, the appellant carries the burden to overcome the presumption of correctness and show prejudicial error. She must do so by providing an adequate record on appeal and presenting argument and legal authority on each contention showing the trial court erred. (*Jameson, supra,* 5 Cal.5th at pp. 608–609.) Although we appreciate the challenges of appearing as a self-represented litigant, an appellant who does so "is entitled to the same, but no greater, consideration" as any other attorney or litigant on appeal and is required to follow the rules. (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 523 ["Although [appellant] is representing herself in this appeal she is not entitled to special treatment and is required to follow the rules."].)

_____

Code, §§ 452, subd. (d), 459, subd. (a); Cal. Rules of Court, rule 8.252(a); *People v. Preslie* (1977) 70 Cal.App.3d 486, 494 [RJN should be filed before briefs are due]; *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4 [postjudgment events or documents not proper matters for RJN]; *Brosterhaus v. State Bar of California* (1995) 12 Cal.4th 315, 325 [reviewing court may exercise discretion to deny RJN of matters not first presented to the trial court].)

4

When a trial court has resolved a disputed factual issue, we review the trial court's finding for substantial evidence. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 (*Winograd*).) Under this standard of review, we determine only "if substantial evidence exists to support the [judgment] in favor of the prevailing party, not to determine whether substantial evidence might support the losing party's version of events." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581–582 (*Schmidt*).) Although substantial evidence is not synonymous with any evidence or a mere scintilla of evidence, but is only evidence that is of ponderable legal significance, reasonable in nature, credible, and of solid value (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005–1006), the testimony of a single credible witness may constitute substantial evidence (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614). We are required to accept all evidence supporting the trial court's judgment, completely disregard contrary evidence, and draw all reasonable inferences from the evidence to support the judgment. (*Schmidt*, at pp. 581–582.)

When an appellant challenges a trial court's discretionary decision, it is her burden on appeal to affirmatively show the decision was an abuse of discretion. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331.) Under this standard of review, we will find a trial court abused its discretion only when its action is arbitrary, capricious, or exceeds the bounds of reason. (*In re Cortez* (1971) 6 Cal.3d 78, 85.) In other words, we must conclude that under all the circumstances, viewed most favorably in support of the decision, no judge reasonably could have made that decision. (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 104.)

An appeal is not a second trial. Under either standard of review, "[w]e do not reweigh evidence or reassess the credibility of witnesses." (*Pope v.*

*Babick* (2014) 229 Cal.App.4th 1238, 1246 (*Babick*).) "We are 'not a second trier of fact.' " (*Ibid.*) We defer to the trial judge's resolution of factual issues as he or she had the benefit of observing the demeanor of the witnesses and is in a better position to assess credibility. (*Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622 (*Johnson*) ["Credibility is an issue for the fact finder."].)

## II.

### *Trial Court's Credibility Determinations*

The trial court found *both* parties had "significant credibility problems." We therefore reject Wife's erroneous assertion the court erred by finding Husband *was* credible. As for Wife's contention that the court erred in finding *her* not credible, we have already explained, "[c]redibility is an issue for the fact finder" (*Johnson, supra*, 28 Cal.App.4th at p. 622), and on appeal "[w]e do not reweigh evidence or reassess the credibility of witnesses" (*Babick, supra*, 229 Cal.App.4th at p. 1246). Wife has failed to present any argument demonstrating the trial court's credibility determinations were *not* supported by substantial evidence. Instead, she essentially argues her version of the events. This is inadequate to carry her burden on appeal. (See *Schmidt, supra*, 44 Cal.App.5th at pp. 581–582.)

On the record before us, we conclude there was ample evidence to support the trial court's assessment of Wife's credibility. After hearing three days of evidence and observing Wife's demeanor on the witness stand, the court found Wife was not credible based on a number of events that reasonably demonstrated a lack of candor. In a trial exhibit she presented, Wife claimed under penalty of perjury that certain debts were community obligations when the court found "her own documentation showed that they were not incurred during the marriage" at all. The court also found Wife

6

willfully violated court orders and agreements reached by the parties, and it weighed such conduct "as negatively affecting her credibility." In a stipulation dismissing a related domestic violence case,[4] the parties agreed the court would grant Husband "exclusive use and possession" of Starlight Way. In another stipulation, the parties agreed to hire a specific appraiser to value the property. In violation of the stipulated court order and without Husband's permission, Wife entered Starlight Way. She also brought a real estate appraiser onto the property who was not the agreed-upon appraiser, despite telling the court in a previous hearing that she would not be having an appraisal done. Wife did not seriously dispute any of this. Instead, she asserted she felt it was acceptable to enter the property because "she 'knew [Husband] was not there.' "

In sum, Wife has failed to demonstrate the trial court's negative assessment of her credibility was arbitrary, capricious or exceeds the bounds of reason, nor has she demonstrated it lacked substantial evidence. There is no error here.

---

[4] Wife and Husband each filed a request for a domestic violence restraining order (DVRO) against one another, on January 25 and February 14, 2018, respectively. Both requests were dismissed by the parties' stipulation on May 24. According to the statement of decision, Wife alleged Husband "threw her to the floor multiple times, choked her with both hands, [and] hit her dog" on January 22, causing "bumps on her head and bruising to her wrists, face, and neck," and that previously on January 7, Husband "yelled, berated her, slapped her, pushed her down, and threw her into a wall." Husband alleged Wife "hit him with lumber and threw rocks at him resulting in bruising and cuts" and that "on multiple dates . . . she has yelled, scratched, punched, and kicked him, as well as throwing rocks, bottles, lumber, glasses, and mugs at him."

## III.

### *Transmutation of Starlight Way*

Property acquired during marriage and before separation is community property unless it is (1) traceable to a separate property source or (2) acquired by gift or inheritance.  (§§ 760 ["Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."], 770, subd. (a)(1), 771, subd. (a).)  The spouse asserting its separate character must overcome this presumption by a preponderance of the evidence.  (*In re Marriage of Valli* (2014) 58 Cal.4th 1396, 1399 (*Valli*); *In re Marriage of Grinius* (1985) 166 Cal.App.3d 1179, 1186.)

"Married persons may, through a transfer or an agreement, transmute—that is, change—the character of property from community to separate or from separate to community.  [Citation.]  A transmutation of property, however, 'is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.'  [Citation.]  To satisfy the requirement of an 'express declaration,' a writing signed by the adversely affected spouse must expressly state that the character or ownership of the property at issue is being changed."  (*Valli*, *supra*, 58 Cal.4th at p. 1400; see §§ 850, 852.)

"[W]henever there is a transfer [of property] from one spouse to another a rebuttable presumption of undue influence arises if the transaction gives one spouse an unfair advantage over the other."  (*In re Marriage of Kushesh & Kushesh-Kaviani* (2018) 27 Cal.App.5th 449, 456; *In re Marriage of Mathews* (2005) 133 Cal.App.4th 624 (*Mathews*).)  That is because under

8

section 721, subdivision (b), "spouses are subject to the general rules governing fiduciary relationships that control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other." (*In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 287 (*Haines*); accord *Mathews,* at p. 628.)

As to Starlight Way, Husband introduced the following evidence: The purchase was financed with a mortgage loan from a bank with only Husband listed as the mortgagee. On November 14, 2017, the sellers executed a "GRANT DEED" transferring Starlight Way to Husband, with Husband taking title as "a Married Man As His Sole and Separate Property." On December 15, 2017, Wife signed an "INTERSPOUSAL GRANT DEED" before a notary public. On December 18, 2017, both the Grant Deed and Interspousal Grant Deed (deed) were recorded with the San Diego County Recorder. The deed stated: Wife "HEREBY GRANTS to [Husband], a Married Man as his sole and separate property" Starlight Way.

The trial court properly found Starlight Way was presumptively community property because it was purchased during marriage in December 2017 and before the date of separation of January 23, 2018. The court found the parties transmuted the property to Husband's separate property with the execution of the deed, and that Husband rebutted the presumption of undue influence under section 721. Accordingly, the trial court determined Starlight Way was Husband's separate property.

Wife contends the trial court erred by finding the parties transmuted Starlight Way to Husband's separate property. She does not present any argument to dispute that the deed satisfied the writing requirement for a

9

valid transmutation under section 852. We conclude in any event that substantial evidence supported the trial court's finding that it did. " 'Though no particular terminology is required [citation], the writing must reflect a transmutation on its face, and must eliminate the need to consider other evidence in divining this intent.' " (*In re Marriage of Bonvino* (2015) 241 Cal.App.4th 1411, 1428.) The deed stated: "It is the express intent of [Wife], being the spouse of [Husband], to convey all right, title and interest of [Wife], community or otherwise, in and to [Starlight Way] to [Husband] as his sole and separate property." As such, it is an express declaration by Wife that the character or ownership of the property at issue was being changed. (*Valli*, *supra*, 58 Cal.4th at p. 1400; see §§ 850, 852.)

The focus of Wife's challenge is her assertion that the trial court erred in finding Husband had rebutted the presumption of undue influence under section 721. She points to her own testimony that she was "forced to sign" the deed to close the mortgage loan; that she signed it "under duress and pressure" from Husband, who committed domestic violence against her[5]; that she had experience in insurance (including selling homeowner insurance policies) but "no expertise in financing, lending or real estate transactions"; and that she is not "highly educated." But as we have explained, Wife cannot carry her burden of demonstrating reversible error by merely relying on her own testimony that supports her version of the events. The trial court found her testimony to be not credible, and our role is not to reweigh the evidence, substitute our own inferences from the evidence, or make different assessments of credibility. (*Schmidt, supra*, 44 Cal.App.5th at p. 582.) We

---

[5] As noted, the parties dismissed their DVRO requests against each other without any judicial finding of domestic violence. (See footnote 4, *ante*.)

must affirm the judgment if substantial evidence supports it, *even if* other substantial evidence would have supported a contrary judgment or finding. (*Ibid.*)

On that point, Wife fails to cite evidence and inferences favorable to the trial court's finding that Husband rebutted the presumption of undue influence. When an appellant challenges the sufficiency of evidence to support a finding, her opening brief must set forth all the material evidence on that issue and cannot merely state facts favorable to her position. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman & Clark*).) When an appellant's opening brief states only favorable evidence and ignores evidence supporting the finding, we may treat the substantial evidence claim as waived and presume the record contains evidence to support the trial court's factual findings. (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1072 (*Delta Stewardship*).)

Although we are not required to undertake an independent examination of the record on appeal, our review of the record does reveal substantial evidence supported the trial court's finding. Here, this court's decision in *Mathews*, *supra*, 133 Cal.App.4th 624 is instructive. In *Mathews*, a couple purchased a residence during marriage. To obtain a more favorable interest rate on a mortgage, wife quitclaimed her interest in the residence to husband, and the residence was acquired in his name alone. (*Id.* at p. 627.) The quitclaim deed was validly executed and recorded. Wife acknowledged the residence was acquired solely in the husband's name but believed her name would be added to the title at a later date. Throughout the marriage, wife and husband both believed the residence was community property and after the separation discovered title to the residence was in his name alone. (*Ibid.*) We concluded these circumstances were sufficient to support a finding

11

that wife entered into the transaction freely, voluntarily and with a full understanding of the quitclaim deed. (*Id*. at p. 631.)

We agree with the trial court's observation that the circumstances in this case are similar to those in *Mathews*.[6] Here, the court found it persuasive that Wife acknowledged she had "[a] greater understanding of the process and financial matters," that "part of the discussion [for executing the deed] involved her bad credit," and she understood "her name would not be on title." Wife's own testimony supported the trial court's findings. Wife agreed it was accurate to state she had "a greater understanding of how to interact with . . . real estate than [Husband]." She testified she was the person "primarily involved in negotiating the purchase" of Starlight Way. She admitted that the lender asked her to sign the deed because the loan would not close if her name was on it because of her debt and credit score; Husband did not tell her that he would not buy the house if she did not sign the deed, but rather he would *not be able* to buy it unless she signed it; and she signed the deed in order to close the loan transaction because *she* did not want to lose the house and needed a place to live, and it would possibly be years before she repaired her credit. Wife also acknowledged the only other person in the room when she signed the deed was the notary public.

Viewing the evidence and drawing all reasonable inferences from the evidence to support the trial court's finding, we conclude there was substantial evidence to support the finding that Husband demonstrated by a

---

6      We do not find Wife's attempts to distinguish *Mathews* persuasive, including her assertion that, unlike this case, *Mathews* did not involve domestic violence. Although Wife asserts Husband was "aggressive and abusive" toward her, there was no factual finding that either party committed domestic violence because the parties agreed to dismiss their respective requests for DVROs. (See footnote 4, *ante*.)

preponderance of the evidence that the transaction " 'was freely and voluntarily made, and with a full knowledge of all the facts, and with a complete understanding of the effect of the transfer.' " (*Haines*, *supra*, 33 Cal.App.4th at p. 296; *Mathews*, *supra*, 133 Cal.App.4th at p. 631 [concluding the burden of proof of rebutting § 721's presumption is by a preponderance of the evidence].)

Wife's other arguments are also unavailing. She takes issue with the trial court's date of separation finding, asserting the court erred in finding Husband gave notice of his intent to divorce her by a "text [message] in September 2017." Although she does not explain how that purported error would affect the court's transmutation finding, the court found the parties' date of separation was January 23, 2018, not Husband's asserted date of September 2017.[7] Wife does not contend there is insufficient evidence to support the court's finding; indeed January 23, 2018 was the separation date Wife claimed to be true in her own pleadings. Regardless, we fail to see how Wife's argument on this point demonstrates an error in the court's transmutation finding.

Wife next argues the trial court erred in placing "great faith in [H]usband's integrity to tell the truth," asserting for example that Husband refused to provide his "financials" throughout the proceedings, he "falsified taxes, income, receipts, rendering his declarations of disclosure defective," he

---

[7]    In its statement of decision, the trial court explained its finding was based on the fact that Husband was arrested on January 23, 2018 and "the parties have not resided together since." The court acknowledged Husband "in good faith believed that he had been clear in his desire to terminate the marriage *before* then" (italics added), but found "it would not have been clear to the reasonable person that his conduct was consistent with the intent to end the marriage."

13

"committed perjury" in his testimony regarding the date of separation. But again, we do not reweigh the trial court's credibility determinations. Although the court made no finding that Husband committed fraud in the dissolution proceedings, Wife fails to explain how fraud in the dissolution proceedings would even be relevant to the transmutation. She does not assert fraud occurred in the transmutation, including for example in the execution of the deed.

Finally, Wife asserts the trial court erred in tracing the down payment on Starlight Way to Husband's separate property. The court found Husband used a $4000 loan on the 401(k) account for the down payment, but because the loan was "significantly less than his separate property interest" in the account and he paid back the loan with his separate property assets post-separation, the court ruled "there was not a community interest from the down[ ]payment." Wife's assertion of error, again, asks us to improperly reweigh the evidence and merely advances her version of the events, while ignoring evidence that supports the court's factual findings. She also fails to explain how this asserted error would affect the court's finding that Starlight Way was transmuted to Husband's separate property.

In sum, we conclude substantial evidence supported the trial court's transmutation finding.

*Reimbursements*[8]

A.    *Husband's Mortgage on His Separate Property Was Not a Debt Incurred by Wife for Her Common Necessaries, Within the Meaning of Section 914, Subdivision (a)(2), and Reimbursement to Husband for the Mortgage Payments Was Improper*

On January 25, 2018, a temporary restraining order (TRO) was issued against Husband for Wife's protection. The TRO included a move-out order requiring Husband to vacate Starlight Way. It also contained an order that Husband continue to make payments on the mortgage for Starlight Way, while Wife resided there during the pendency of the domestic violence case. Notably, nothing in the record reveals the court reserved jurisdiction to later reallocate the payment of the mortgage while the TRO was in effect. These orders were continued at various times and remained in effect until May 24, 2018, when the parties stipulated to dismiss their respective TROs against each other and requests for DVROs. Thus, the trial court found Wife had exclusive use of Starlight Way from the date of separation on January 23, 2018 until May 24, 2018, at which point Husband resumed possession.

At trial, Husband asserted Wife owed him fair market rent for Starlight Way during the five months she lived in the house post-separation,

---

8     Wife incorrectly refers to the trial court's award of reimbursements as "equalizing payments." Equalizing payments are used in the specific context of dividing community property. (See, e.g., *In re Marriage of Andresen* (1994) 28 Cal.App.4th 873, 880 [family law court has broad discretion in determining how to effect an equal allocation of community property and "may award one or more items of the property to one party and require that party to make an equalizing payment to the other"].)

or Wife owed him for the rent he had paid[9] on his rental as a result of his non-possession of Starlight Way. The court agreed with Wife that Husband was *not* entitled to *either* rent on Starlight Way or to reimbursement of his rent, and denied his request.

However, the trial court treated Husband's request "as a request for reimbursement under . . . section 914, subdivision (a)(2)" for Wife's "post-separation use of his separate property." Section 914, subdivision (a)(2), provides that "a married person is personally liable for the following *debts incurred by the person's spouse* during marriage: [¶] . . . a debt incurred *for common necessaries of life* of the person's spouse after the date of separation of the spouses." (Italics added.) The court found "[t]he mortgage is a debt," and "[t]hat debt was paid—during the time period [Wife] used the property post-separation—for [Wife's] necessities of life, namely shelter." It found Husband paid a monthly mortgage payment of $1,930.37 during Wife's post-separation use of the property. The court then ordered Wife *pay Husband* a reimbursement in the total amount of $7,721.48,[10] under section 914, subdivision (a)(2).

Wife asserts the trial court erred in awarding Husband the reimbursement under section 914, subdivision (a)(2). We agree. As we shall

---

[9]    Husband requested an award of $400 per month, apparently for rent he paid for an apartment from January 24, 2018 through May 31, 2018.

[10]    The court calculated the amount as follows: For Wife's 8 days of use from January 23 to January 31, 2018, it divided $1,930.37 by 31 and multiplied by 8 for a pro rata share of $498.16. For February through April 2018, 3 months of mortgage payments totaled $5,791.11. For 23 days of use from May 1 to May 23, it divided the monthly mortgage by 31 and multiplied by 23 for a pro rata share of $1,432.21.

explain, the court's decision was based on an erroneous application of section 914, subdivision (a)(2).

Section 914, subdivision (a), provides:

"Notwithstanding Section 913, a married person is personally liable for the following *debts incurred by the person's spouse during marriage*:

"(1)  A debt incurred for necessaries of life of the person's spouse before the date of separation of the spouses.

"(2)  Except as provided in Section 4302, a debt incurred *for common necessaries of life* of the person's spouse after the date of separation of the spouses."  (Italics added.)

"[C]ommon necessaries [of life] are those that *all* families need (e.g., food, clothing, and shelter)," and depends on the circumstances of the particular marriage.  (*Direct Capital Corp. v. Brooks* (2017) 14 Cal.App.5th 1168, 1174 (*Direct Capital*).)

"Section 914 is an exception to the general rule that a married person's separate property is not liable for *debts incurred by his or her spouse* during marriage."  (*Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 309, italics added.)  "It does not hinge on the separate or community nature of the non[-]debtor spouse's property, but instead ascribes liability to 'a married person' for specified *debts incurred by the debtor-spouse*, with different language for debts incurred pre- and post[-]separation."  (*Direct Capital, supra*, 14 Cal.App.5th at p. 1172, italics added.)

As should be now clear, "the express terms of section 914 . . . governs *'debts incurred by the person's spouse.'* "  (*CMRE Financial Services Inc. v. Parton* (2010) 184 Cal.App.4th 263, 268 (*CMRE Financial*), italics added.)  Thus, in *Direct Capital*, husband was held liable to a computer equipment company for a $40,000 debt incurred by wife pre-separation, for an office computer used in her law practice that generated community property

17

income. (*Direct Capital*, *supra*, 14 Cal.App.5th at pp. 1170, 1172.) The trial court's finding that "the debt was a community property obligation" under section 914, subdivision (a)(1), was upheld on appeal. (*Id.* at p. 1171.) In *CMRE Financial*, wife would ordinarily have been liable for hospital and medical bills incurred by husband post-separation to the hospital's assignee under section 914. (*CMRE Financial*, at pp. 265–266.) But wife's liability for husband's post-separation debt was discharged under section 916 when judgment of dissolution was entered without express assignment to wife of any liability for husband's hospital and medical costs. (*CMRE Financial,* at p. 269.)

Here, unlike in *Direct Capital* or *CMRE Financial* where the debtor-spouse owed money to a third party creditor, Wife (the purported debtor-spouse) incurred no debt whatsoever within the meaning of section 914. She owed no one money. The mortgage was *a debt incurred by Husband*, and it was incurred by him *to finance his separate property*, not to provide Wife with shelter. Wife was simply staying at his house without paying rent. The trial court expressly rejected Husband's request that Wife pay him fair market rent during her 5-month stay, but the court's reimbursement award under the guise of section 914 effectively ordered Wife to do just that. Moreover, if Wife had incurred a debt for her common necessaries, section 914 makes Husband liable for that community obligation. (See *Direct Capital*, *supra*, 14 Cal.App.5th at pp. 1171–1172.) And nothing in section 914 authorizes a reimbursement to a spouse for a debt paid under the statute.[11] By its

_____

[11] The trial court suggested its reimbursement award was "potentially . . . equitable relief similar to a *Watts* credits for reimbursement of the fair market value of [Wife's] use of his separate property asset." It then found "the mortgage payment amount is credible evidence of the fair market value

18

express terms, section 914 simply did not apply in this case, and it was error for the trial court to order Wife to reimburse Husband for a debt he incurred to finance his separate property.

Judicial discretion is not unfettered. "The scope of discretion always resides in the particular law being applied by the court, i.e., in the ' "legal principles governing the subject of [the] action[.]" ' " (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 337.) If the court's decision reflects " 'an erroneous understanding of applicable law . . . the court has not properly exercised its discretion under the law. . . . [A] discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal.' " (*Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463.) Because the trial court erred in its application of section 914, subdivision (a)(2), and erroneously concluded it had discretion under that statute to reimburse Husband for his mortgage payments, we reverse the court's reimbursement award to Husband of $7,721.48. (See *Eneaji*, at p. 1463.) Because we reverse on this ground, we

---

of the property." This is also incorrect. Known as *"Watts* charges," when one spouse has exclusive use of a *community* asset after separation, such as a residence, the court can order that the spouse reimburse *the community* for the value of the exclusive use. (*In re Marriage of Watts* (1985) 171 Cal.App.3d 366, 373–374.) A spouse who, after separation, uses earnings or other separate funds to pay preexisting *community* obligations is entitled to reimbursement called "*Epstein* credits." (*In re Marriage of Epstein* (1979) 24 Cal.3d 76, 84–85.) So when a spouse makes payments on the *community* residence that the other spouse was exclusively using post-separation, with his separate funds after separation, he is entitled to reimbursement. (*In re Marriage of Jeffries* (1991) 228 Cal.App.3d 548, 552–553.) Neither *Watts* charges nor *Epstein* credits are available here because Starlight Way was determined to be Husband's separate property.

need not reach the merits of Wife's other contentions of error as to the reimbursement award.

B.  *The Order for Reimbursements to Husband for Payment of Wife's and Her Adult Child's Health Insurance Premiums Was Interlocutory and Is Not Appealable*

Wife asserts the trial court erred by ordering her to reimburse Husband for his payment of health insurance premiums that covered Wife and her adult daughter from February through December 2018.  Among other reasons, she argues Husband was not entitled to reimbursement because the evidence showed he intentionally cancelled health insurance coverage for her and her daughter, in violation of the automatic temporary restraining orders (ATROs) imposed upon commencement of the proceedings. (§ 2040, subd. (a).)[12]  However, based on our review of the dissolution judgment, we conclude the trial court's order regarding Husband's entitlement to reimbursement for health insurance premiums for Wife and

_____

[12]    Section 2040, subdivision (a), provides in part:  "[T]he summons shall contain a temporary restraining order: [¶] . . . [¶] (2)(A) [*r*]*estraining both parties from* transferring . . . or in any way *disposing of, any property*, real or personal, whether community, quasi-community, or separate, *without the written consent of the other party or an order of the court*, except in the usual course of business or for the necessities of life, *and requiring each party to notify the other party of proposed extraordinary expenditures* at least five business days before incurring those expenditures and to account to the court for all extraordinary expenditures made after service of the summons on that party.  [¶] . . . [¶] (3) [*r*]*estraining both parties from* cashing, borrowing against, *canceling*, transferring, disposing of, or changing the beneficiaries of *insurance or other coverage, includin*g life, *health*, automobile, and disability, *held for the benefit of the parties* and their child or children for whom support may be ordered."  (Italics added.)

20

her adult child was not a final order.  Rather, it was an interlocutory order and thus non-appealable.[13]

An appealable order or judgment is essential to appellate jurisdiction and an order or judgment is not appealable unless expressly made so by statute.  (*Griset v. Fair Political Practices Commission* (2001) 25 Cal.4th 688, 696–697 (*Griset*); *Allabach v. Santa Clara County Fair Assn.* (1996) 46 Cal.App.4th 1007, 1010.)  Code of Civil Procedure section 904.1, subdivision (a), sets forth those judgments and orders that are appealable, stating in relevant part:  "An appeal . . . may be taken from any of the following:  [¶] (1) From a judgment, except an interlocutory judgment, other than as provided in paragraphs (8), (9), and (11)[.]"  To be appealable, a judgment or order generally must be "final" and not "interlocutory."  (Code Civ. Proc., § 904.1, subd. (a)(1); *Griset*, at p. 698.)

The test whether a judgment or order is final and appealable is as follows:  " '[W]here no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but *where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties*, the

---

[13] Because this issue was not raised by either party in the briefing on appeal, we issued an order requesting the parties submit supplemental letter briefs addressing the question of whether Wife's appeal as to the court's order regarding the health insurance premiums should be dismissed as non-appealable.  We also requested that the parties submit a copy of any order issued by the Superior Court after December 31, 2020 addressing and/or deciding any request by Husband for reimbursement of the health insurance premiums, and to address whether we should take judicial notice of any such order.  We have received and considered the parties' supplemental briefs.  We have not been advised by either party that the trial court made any further orders on this matter since its December 31, 2020 judgment.

decree is interlocutory.' " (*Griset*, *supra*, 25 Cal.4th at p. 698, italics added; cf. *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 304 (*Sullivan*) [to be appealable, judgment or order must be final in that it leaves no issue to be determined]; *Yeboah v. Progeny Ventures, Inc.* (2005) 128 Cal.App.4th 443, 448 (*Yeboah*) [order directing an accounting is interlocutory and non-appealable if further judicial action is required after the accounting is ordered].) "An interlocutory order or judgment has two characteristic features: It is not final for purposes of appeal, and is also not final in the trial court, when it may be modified after further evidence or law has been considered." (*Yeboah*, at p. 449.)

At trial, Husband had requested reimbursement for payments he made for health insurance and dental insurance coverage for Wife and Wife's adult child. He presented evidence he paid a monthly amount of $465.96 for health insurance and a monthly amount of $20.08 for dental insurance, and that he paid a total of $5,346.66 for 11 months from February to December 2018. However, the trial court found this was "the entire cost for [Husband] plus family." Because it had no evidence of what portion of the health insurance premiums was attributable to coverage for Wife and her adult child, the court did *not* make any order of reimbursement. Instead, it made only an initial finding that Husband's payment of health insurance premiums for coverage of Wife and her adult child was not in lieu of spousal support and Husband *would be* entitled to reimbursement for that portion of his premium payments attributable to that additional coverage.

It then reserved jurisdiction over the reimbursement of health insurance premiums, for 90 days after final judgment, to allow Husband to file a request for order with documentation of the proportional break-down of the payments. Only then would the court presumably finally decide whether to

award Husband reimbursement and the amount of any such reimbursement award. If Husband failed to file a request for order with documentation within the 90-day period, jurisdiction would expire.

Because on the face of its order the court contemplated further judicial action, the order was interlocutory only and *not* a final, appealable order. (Code Civ. Proc., § 904.1, subd. (a)(1); *Griset, supra,* 25 Cal.4th at p. 698; *Sullivan, supra,* 15 Cal.4th at p. 304; *Yeboah, supra,* 128 Cal.App.4th at p. 448.) Therefore, to the extent Wife appeals the order in the December 31, 2020 judgment regarding health insurance reimbursement, we dismiss her appeal of that claim for lack of jurisdiction to consider a non-appealable order.[14]

## V.

### *401(k) Account*

At trial, Wife asserted Husband liquidated the entire balance of a 401(k) account in violation of his fiduciary duty to her and the ATROs. The trial court found the evidence had established Husband accessed the funds for "necessities of life," an exception under section 2040, subdivision (a)(2)(A), and declined to find that he breached his fiduciary duty. However, the court also found the 401(k) account had "a significant community interest" and Wife was entitled to her share of that community property interest. It determined the appropriate date for valuation of the account was time of trial, or July 31, 2020, and ordered the parties to hire an expert, at Husband's expense, to calculate what the value of the account would have

---

[14] We note that if and when the trial court issues an order after December 31, 2020 regarding health insurance reimbursement, that postjudgment order may constitute an appealable postjudgment order pursuant to Code of Civil Procedure section 904.1, subdivision (a)(2).

23

been on that date "were it not emptied" and what portion belongs to the community. The court reserved jurisdiction over the selection of the expert and the division and distribution of the asset, as well as how it affects other equalizing payments.

Wife asserts the trial court erred in its finding that Husband liquidated his 401(k) plan account for necessities of life and that he did not breach his fiduciary duty. She incorrectly requests we apply a de novo standard of review. (*Winograd, supra*, 68 Cal.App.4th at p. 632 [when a trial court has resolved a disputed factual issue, we review the court's finding for substantial evidence].) She argues, without any citations to record support, that Husband failed to present evidence he provided her with the required notice of at least five business days before incurring any proposed extraordinary expenditures and an accounting of those expenditures. And the court erred in crediting Husband's testimony he withdrew the funds for necessities of life, because Husband is untrustworthy for a host of reasons, including because he has a "clear pattern of hiding assets."

As we have explained in resolving Wife's other contentions, such arguments cannot overcome the presumption of correctness and fails to show reversible error. Though she asserts Husband failed to provide her with the required notice, she does not point us to where in the record on appeal we would find evidence to support her contention, or that she requested the trial court to find that Husband failed to provide her with the required notice, or that she requested the trial court provide her relief for the alleged notice violation. Her failures result in waiver and forfeiture of the contention. (Cal. Rules of Court, rule 8.204(a)(1)(C); *WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894; *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 378.)

24

Wife's opening brief states only favorable evidence to her and fails to acknowledge evidence and inferences favorable to the trial court's finding that Husband accessed the 401(k) funds for necessities of life. (*Foreman & Clark, supra*, 3 Cal.3d at p. 881 [an appellant's opening brief must set forth all the material evidence on that issue and cannot merely state facts favorable to her position].) As such, we may treat Wife's substantial evidence claim as waived and presume the record contains evidence to support the trial court's factual findings. (*Delta Stewardship, supra*, 48 Cal.App.5th at p. 1072.)

Again, although we are not required to undertake an independent examination of the record, we note the trial court's statement of decision does reference Husband's failure to provide Wife with the required five-day notice. The court found Husband did not violate the ATROs or his fiduciary duty when he withdrew funds from the 401(k) account, but it viewed his failure to notify Wife five days before the liquidation "as something that would justify sanctions." As we discuss later, the court declined to sanction either party for what it determined was sanctionable conduct by both. Thus the court considered, but rejected, an appropriate remedy for Husband's violation of the notice requirement and Wife presents no argument or authority to establish the court's ultimate resolution of the violation was an abuse of discretion.

Finally, the trial court, sitting as the sole trier of fact, was entitled to credit Husband's testimony that he needed the funds for necessities of life. We do not reweigh the court's credibility determinations. (*Babick, supra*, 229 Cal.App.4th at p. 1246 ["We do not reweigh evidence or reassess the credibility of witnesses."].) Here, the court accepted Husband's testimony that the continued payments of the insurance premiums for Wife and her

25

adult child "increased the [already existing] financial strain" on him after the parties separated, and that his involuntary loss of work (whether he was fired or laid off) "ma[de] it credible that he did not [have] other financial means to maintain the necessities of life." Husband's testimony alone constitutes substantial evidence to support the court's finding and requires us to affirm the finding. (*Schmidt, supra,* 44 Cal.App.5th at pp. 581–582; *In re Marriage of Mix, supra,* 14 Cal.3d at p. 614.)

## VI.

### *Section 271 Sanctions*

Each party had requested attorney fees as sanctions under section 271 against the other. Husband requested $5,687.50; Wife requested $33,674.75. The court denied both requests. Wife asserts the court erred in denying her request for fees against Husband. We review a court's decision whether to award sanctions under section 271 for abuse of discretion. (*In re E.M.* (2014) 228 Cal.App.4th 828, 850.) "The imposition of sanctions under section 271 is committed to the sound discretion of the trial court. The trial court's order will be upheld on appeal unless the reviewing court, 'considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order.' " (*Ibid.*) We conclude Wife has failed to demonstrate any abuse of discretion in the court's denial of her request for section 271 sanctions against Husband.

The trial court denied both parties' request for sanctions because it found that imposition of sanctions against either party would impose an undue financial burden on both Husband and Wife. Section 271, subdivision (a), provides "[t]he court *shall not* impose a sanction . . . that imposes an unreasonable financial burden on the party against whom the sanction is imposed." (Italics added.) In asserting error, Wife fails to address the court's

26

finding that imposition of Wife's requested $33,000 in attorney fees against Husband would impose an unreasonable financial burden on him. Although this omission alone is a basis to reject her contention, we see no abuse of discretion in the trial court's decision. At the time of trial, the court had found Husband was unemployed and receiving unemployment compensation, he had $150 in his bank accounts and more than $24,000 in debt, and he did not have the ability to pay spousal support. On this record, the trial court's finding that a sanction of $33,000 would impose an unreasonable financial burden on Husband is not arbitrary, capricious or outside the bounds of reason.

But even if sanctions would not impose an undue financial burden, the trial court stated it would not award sanctions to either party because of both parties' conduct in the litigation. The court explained it would examine " 'the entire record' " to determine whether to impose sanctions, and that it "view[ed] this as not just looking at the overall behavior of one party in the context of the entire case, but also to include a comparison of the behaviors of each party." The court then found that both Husband and Wife had engaged in conduct that frustrated the promotion of settlement and cooperation, including for example:

Both parties violated various court orders—Husband "chained the toilet shut in the Starlight [Way] property while temporary restraining orders were in place and [Wife] was exercising a majority of possession of the property," which the court found to be "absolutely egregious conduct" by Husband. Wife violated the stipulation resolving the mutual restraining orders by entering the property after an agreement giving Husband exclusive use and control, and by "surveilling" Husband. Although the "stipulation was to prevent the risk of future domestic violence or abuse between the parties," Wife

27

"drastically minimize[d] the severity" of her conduct. Because the court viewed her conduct "as potentially criminal," it advised Wife of her Fifth Amendment privilege against self-incrimination at the hearing on Husband's request for a new restraining order.

Both parties failed to timely file their final declarations of disclosure, resulting in delays. Both parties' property declarations contained "inconsistencies" about the purchase date of Starlight Way and the value of other items. But specifically, the trial court found Wife's testimony, live or by declaration, on her requests for reimbursements for debts to be "false." And although the court found Husband did not violate the ATROs or his fiduciary duty when he withdrew funds from the 401(k) account, the court viewed his failure to notify Wife five days before the liquidation "as something that would justify sanctions."

The trial court expressly understood its finding that each party had engaged in conduct frustrating the promotion of settlement and cooperation "does not preclude an award to either party," but it viewed "the parties' behaviors as cancelling each other's conduct out." For that reason, the court in its discretion declined to award either party sanctions. In asserting error, Wife ignores the evidence supporting the trial court's findings regarding her own conduct, and discusses only evidence she believes is favorable to her version of the events. Wife again overlooks the principles that constrain our review. She reargues the facts and ask us to reweigh the evidence and credibility determinations, including by recasting the trial court's finding of her false testimony or violations of court orders as simply "Wife's mistakes."

We conclude Wife has failed to demonstrate any abuse of discretion by the court here.[15]

## VII.

### *Asserted Judicial Bias*

Although Wife's opening brief does not expressly set forth a separate contention that the judgment must be reversed because of trial court bias, her brief included tangential and conclusory assertions, intermingled with her contentions of error, that the trial court was biased against her or in favor of Husband. By way of example, Wife asserts: the trial court's citation of testimony that the deed was required by the loan officer to close the loan showed the court's bias against her; the court's questioning of her at trial was "prosecutorial, with a specific end in mind," and it was "specifically looking throughout the trial to impeach [her]"; the court showed its bias in favor of Husband by advising him, as a self-represented litigant, regarding

---

[15]     Elsewhere in her opening brief, Wife asserts the trial court erred in not awarding her attorney fees as a sanction because Husband failed to provide "taxes and basic financial documents," including the couple's 2017 tax return. And for that reason, the court erred when it awarded *her* an equalizing payment of $251 for 2017 taxes "based on [H]usband's incomplete documents." To the extent this is separate contention of error, Wife fails to explain how the asserted error is a basis for reversal of the equalizing payment to her. On that basis, we reject it.

At trial, Husband "described" a 2017 tax return of $502 and provided an unsigned copy of the 2017 tax return. The trial court determined the tax return was community property and awarded Wife her one-half interest of $251. Wife did not take a position in the trial court on what amount she was owed, if different than the $251. On appeal, Wife does not challenge the amount of the equalizing payment awarded to her; she only contends the trial court should not have relied on Husband's "incomplete documents." Husband's testimony and the unsigned copy of the 2017 tax return was substantial evidence to support the trial court's determination.

procedures for filing a proof of service, but not advising her that a motion to compel was required to obtain a finding regarding his discovery violations.

We conclude Wife has waived or forfeited any claim of judicial bias by not filing a motion to disqualify the trial court pursuant to Code of Civil Procedure section 170.3, or otherwise timely raising or objecting to the purported bias in the proceedings below. In *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, the court concluded the appellants had failed to "preserve their claim of judicial bias for review because they did not object to the alleged improprieties and never asked the judge to correct remarks made or recuse himself." (*Id.* at p. 1218.) Here too, Wife, who was represented by counsel at trial, was required to object "at the earliest practicable opportunity." (Code Civ. Proc., § 170.3, subd. (c)(1).) She did not. Because Wife failed to object below and never asked the trial judge to correct any improper remarks or recuse himself, she has failed to preserve the claim for appeal. (*Moulton*, at p. 1218; *In re Steven O.* (1991) 229 Cal.App.3d 46, 53–55.)

We further conclude that, under the principles of appellate review we have previously explained, Wife has waived or forfeited any claim of judicial bias by: (1) making only conclusory and/or speculative assertions of judicial bias, and that are, for the most part, unsupported by citations to the record; and (2) not presenting any substantive legal analysis showing any prejudicial bias by the trial court. (*Jameson*, *supra*, 5 Cal.5th at pp. 608–609.) Although Wife cites certain canons for judicial conduct regarding integrity, independence, fairness, impartiality, and diligence, she does not present any substantive legal argument showing the trial court violated any of those canons. Rather, she only cites certain findings by the court with which she disagrees.

Also, to the extent Wife asserts the trial court showed its bias by finding Husband more credible and his evidence more persuasive and/or by making findings and decisions adverse to her, she does not show it acted outside the normal function of a trial court in considering and weighing the evidence admitted at trial and making findings of fact based on the evidence. "The mere fact that the trial court issued rulings adverse to [Wife] on several matters in this case, even assuming one or more of those rulings were erroneous, does not indicate an appearance of bias, much less demonstrate actual bias." (*Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 674; see also, *Blakemore v. Superior Court* (2005) 129 Cal.App.4th 36, 59–60 [mere erroneous rulings do not show appearance of bias].) Likewise, "[m]ere expressions of opinion by a trial judge based on actual observation of the witnesses and evidence in the courtroom do not demonstrate a bias." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1111 (*Guerra*).)

Finally, to the extent Wife asserts that she was denied her constitutional right to due process because of the trial court's alleged bias, she has the burden to show such bias was so prejudicial that it deprived her of a fair, as opposed to a perfect, trial. (*Guerra*, *supra*, 37 Cal.4th at p. 1112.) Wife must demonstrate she was denied her right to a fair trial and, in particular, show that the trial court's alleged bias was so great that it became constitutionally intolerable. (*People v. Freeman* (2010) 47 Cal.4th 993, 1001.) We have reviewed the record on appeal. Contrary to Wife's assertions, the record demonstrates Wife received a fair trial by an impartial and unbiased court.

## DISPOSITION

The appeal is dismissed to the extent Wife challenges the December 31, 2020 order regarding Husband's request for reimbursement of health

insurance premiums he paid. The judgment is reversed to the extent it awards Husband $7,721.48 as reimbursement for Wife's post-separation use of the Starlight Way property, and the judgment is otherwise affirmed. The matter is remanded to the trial court with directions to recalculate the balance of equalization payments consistent with this opinion.

DO, J.

WE CONCUR:

HUFFMAN, Acting P. J.

DATO, J.