Filed 2/14/25  T.B. v. Q.P. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| T.B., | H051846 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 20FL002130) |
| v. | |
| Q.P., | |
| Defendant and Respondent. | |

This appeal concerns a father's challenge to an adverse domestic violence restraining order and an order awarding sole legal and physical custody of the parties' young child to the mother.

Appellant T.B. (father) and respondent Q.P. (mother or Q.P.) have one son, D.B. (child), who was nearly four years old at the time the order was entered below.  In July 2023, mother, pursuant to the Domestic Violence Prevention Act (DVPA or the Act; Fam. Code, § 6200 et seq.),[1] filed a request for domestic violence restraining order (DVRO request) against father.  She also sought a custody modification order awarding her sole physical and legal custody of the child.  Father opposed both requests.  A contested hearing took place on January 10, 2024, during which both parties testified.  As reflected in the settled statement, "[t]he [trial c]ourt found on the record that [mother] was a credible witness who had proven beyond a preponderance of the evidence that

---

[1] All further unspecified statutory references are to the Family Code.

[father] had committed domestic violence as defined in Family Code section 6203." The court therefore granted mother's DVRO request, awarded mother temporary sole legal and physical custody of the child, and ordered that father receive no visitation until further court order. (This superseded a prior temporary order granting joint legal custody to the parties and sole physical custody to mother.) A formal order was filed on January 10, 2024.

On appeal, father argues that the trial court erred with respect to the granting of the DVRO and the custody and visitation orders. Father contends, inter alia, that the court erred in excluding certain evidence that he proffered at the hearing and that this evidentiary ruling violated his constitutional right to due process. He argues further that the trial court erred when it "unilaterally" (father contends) drafted and certified the settled statement.

We conclude that there was no error and will affirm.

## I.   PROCEDURAL HISTORY

### A.   Prior Proceedings

On November 17, 2022, the court issued an order after screening, awarding temporary sole physical and legal custody of the child to mother. Father was granted weekend care and visitation of the child to take place at the home of the paternal grandparents.

In June 2023, father sought an emergency visitation order allowing him to take temporary custody of the child for the purpose of taking him to a dentist for an emergency procedure that would include general anesthesia. Father alleged in the request that he had made multiple unsuccessful efforts to obtain mother's cooperation to facilitate the emergency dental procedure. He alleged further that "[t]he urgency of [his] request [was] further compounded by the fact that Mother . . . had a pending criminal matter against her for punching [father] in the face." He alleged that mother had punched him multiple times in the face on April 16, 2023, in the child's presence. Father also

2

requested monetary sanctions of $5,000 under section 271. The court granted the emergency order permitting him to have custody of the child "from 9:00 a.m. on June 20, 2023 to 8:00 p.m. on June 26, 2023 for the purpose of taking the minor child to his emergency dentist procedure and recovery."

On July 13, 2023, there was a hearing on father's request for emergency order. The court ordered that the parties would have joint legal custody. The court denied father's request for sanctions.

### B. Mother's DVRO Request

#### 1. Mother's Request

Mother, a self-represented litigant, filed a DVRO request on July 14, 2023. Mother sought a restraining order against father for herself, her mother and sister, and the child. The request consisted of a completed Judicial Council form request for DVRO signed under penalty of perjury, and a completed Judicial Council form request for child custody and visitation orders. The court granted mother's request for temporary orders in part, ordering that father not harass assault, threaten, or stalk mother, disturb her peace, or exercise coercive control over her. The court denied temporary no contact, stay away, visitation and custody orders pending the hearing, and denied any orders in favor of Q.P.'s mother or sister.

Mother alleged that father had abused her on April 16, 2023, in the presence of Q.P.'s mother. Father caused mother emotional harm by saying " '[his] attorney will[] sue [her and she will] go [to] jail.' " Mother alleged further that on that day, father entered her house without permission, refused to drop off the child, and "just stood there. . . ." In a two-page attachment to the DVRO request, mother alleged that she could not get father to leave her home. She stated she started to slap father but did not follow through on that action. Mother alleged that both she and father called the police. After the police arrived and spoke to both parties, mother was handcuffed and arrested.

### 2. *Father's Response to Mother's DVRO Request*

Father, represented by counsel, filed a verified response to mother's DVRO request. Father stated that he believed mother's request was "nothing but retaliatory." He stated that on April 16, 2023, he did not refuse to drop off the child, and he entered the home with mother's permission; it "was a regular drop-off day until [mother] actually attacked [father]."

Father denied further that he had stalked mother on April 19, 2023, as she alleged. After mother refused to make the child available for a Facetime visit, father asked the police to conduct a welfare check to make sure the child was safe.

### C. Hearing on Mother's DVRO Request

The DVRO request by mother was originally noticed for hearing on August 1, 2023. Father's request for continuance was granted. An evidentiary hearing took place on January 10, 2024. Mother and father appeared without counsel and provided sworn testimony. The hearing was not reported.[2]

Mother testified that the matters stated in her declaration were accurate to the best of her knowledge. She testified that after father was granted joint legal custody of the child, he immediately changed the child's medical providers without mother's knowledge or consent. Shortly afterward, the child had a serious illness. After mother contacted father, he suggested the child be taken to an emergency room near father in a different county. Father picked up mother and the child and drove them to his home. Father then told mother that he had made an appointment for the next morning at a clinic and she and the child would have to spend the night. Mother reluctantly agreed, and because there were no other sleeping choices, she slept on the floor in father's bedroom at his parents' home. During the night, father got on top of mother, forcibly removed her clothing, and

---

[2] The summary of evidence that follows is derived from the settled statement prepared by the trial judge and filed April 8, 2024.

had forcible sexual intercourse without her consent. Mother admitted on cross-examination that she did not call the police to report the incident.

At another time, father made a medical appointment for the child that was in a different county near his home, and he picked up mother and the child to take them to the appointment.[3] During the drive (with the child in the back seat), father fondled mother over her clothing and then digitally penetrated her vagina "without her consent by means of force, fear, and duress." Mother admitted on cross-examination that she did not call the police to report the incident.

On a third occasion, during a visitation exchange, father entered mother's home without her permission. On that (or another) occasion, mother was arrested by the police and was charged with assaulting father; she testified that any acts by her were done in self-defense.

Father testified that he had changed the medical providers for the child shortly after obtaining joint custody, and that he had done so without advising mother or obtaining her permission. He admitted that on one occasion, after picking mother up and telling her they were going to the emergency room for the child's illness, he instead drove to his home and said he had made an appointment at a clinic for the next day. Father admitted that he told mother that they would have to stay overnight. He testified that he and mother had consensual sexual intercourse on the floor in his bedroom.

Father also testified that at another time, he had offered to take the child to a medical clinic. He denied that during the drive he had fondled or digitally penetrated mother.

Father testified that on one occasion, he entered her home during a custody exchange because the child was having bathroom issues. He had filmed a portion of the interaction with his cell phone and offered to play the video; the court declined.

---

[3] Although not clearly expressed, we infer from the settled statement that the medical appointment was for treatment of the child.

5

Finally, father testified that in another instance, mother struck him one time. The police arrested her, and she was charged with assault.

The court—as recited in the settled statement—"found on the record that [mother] was a credible witness who had proven beyond a preponderance of the evidence that [father] had committed domestic violence." The court therefore granted mother's DVRO request for a period of three years to January 10, 2027. Mother was the sole protected party; insofar as the request that Q.P.'s mother, sister, and child be included as protected parties, the court denied the DVRO request. The court made a finding under section 3044 regarding father as the restrained person, namely, that "there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child." (*Id*., subd. (a).) It ordered that mother would have temporary sole physical and legal custody of the child and that father would receive no visitation pending further court order. The court also ordered that father attend and complete a 16-week parenting without violence program.

The court signed formal orders granting the DVRO request and concerning temporary custody and visitation, which were filed January 10, 2024.

Father filed a notice of appeal in which he challenged the minute order and formal order granting mother's DVRO request, both filed January 10, 2024. (See *Rivera v. Hillard* (2023) 89 Cal.App.5th 964, 974 ["an order granting or denying a request for DVRO" is appealable]; *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1377-1378 [postjudgment child custody order appealable].)

## II.    DISCUSSION

### A.    Domestic Violence Restraining Orders

The DVPA is intended "to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the

6

violence." (§ 6220.) "Courts may issue a restraining order to achieve this purpose upon 'reasonable proof of a past act or acts of abuse.' (§ 6300, subd. (a).) 'The length of time since the most recent act of abuse is not, by itself, determinative. The court shall consider the totality of the circumstances in determining whether to grant or deny a petition for relief.' (§ 6301, subd. (c).)" (*J.H. v. G.H.* (2021) 63 Cal.App.5th 633, 641.) Further, "[n]o showing of the probability of future abuse is required to issue a DVPA restraining order." (*Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 823.)

Abuse is defined under the DVPA as consisting of: "(1) To intentionally or recklessly cause or attempt to cause bodily injury. [¶] (2) Sexual assault. [¶] (3) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another. [¶] (4) To engage in any behavior that has been or could be enjoined pursuant to Section 6320." (§ 6203, subd. (a).) Under the DVPA, to constitute abuse, there need not be "the actual infliction of physical injury or assault." (*Id.*, subd. (b).)

Section 6320, subdivision (a) identifies various conduct that the court may enjoin; many of the acts specified, such as harassment and disturbance of the peace of another, do not involve the infliction of physical injury or assault upon the victim. As a panel of this court has held, "[S]ection 6320 broadly provides that 'disturbing the peace of the other party' constitutes abuse for purposes of the DVPA" (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497), and that "the plain meaning of th[is] phrase . . . may be properly understood as conduct that destroys the mental or emotional calm of the other party" (*ibid.*). Section 6320 contains a broad definition of " 'disturbing the peace of the other party' " as "conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party. . . . This conduct includes, but is not limited to, coercive control . . . ." (*Id.*, subd. (c).)

The party seeking a restraining order under the DVPA bears the burden of establishing the justification for the order. (See *Jan F. v. Natalie F.* (2023)

7

96 Cal.App.5th 583, 593.)  "The burden of proof is by a preponderance of the evidence. [Citations.]"  (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 11.)

We review a trial court order granting or denying a petition for a restraining order under the DVPA for abuse of discretion.  (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264 (*S.M.*).)  To the extent that we must consider the trial court's factual findings, they are reviewed for substantial evidence.  (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226.)

**B.  Custody and Visitation Orders**

In a trial court's consideration of custody and visitation issues, "the overarching [statutory] concern is the best interest of the child. . . . When determining the best interest of the child, relevant factors include the health, safety and welfare of the child, any history of abuse by one parent against the child or the other parent, and the nature and amount of contact with the parents.  [Citation.]"  (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255 (*Montenegro*).)

An appellate court reviews custody and visitation orders under "the deferential abuse of discretion test.  [Citation.]"  (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.)  Factual findings made by the trial court concerning custody and visitation orders are reviewed for substantial evidence.  (*Jaime G. v. H.L.* (2018) 25 Cal.App.5th 794, 805 (*Jaime G.*).)  The appellant bears the burden of demonstrating that the trial court abused its discretion.  (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 16.) And an "order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.  [Citations.]"  (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

**C.  Father's Appellate Challenges**

Father asserts five arguments in this appeal.

(1)     The trial court's refusal to consider evidence proffered by father (two videos and two police reports) violated his right to due process under the

8

Fourteenth Amendment of the United States Constitution and under section 3022.

(2)     There was no substantial evidence to support the issuance of the DVRO.

(3)     The court erred in applying the presumption under section 3044 in making the custody order because there was no "clear evidence of [appellant's] wrongdoing," there was insufficient evidence to support the order, and it did not comply with "the 'Best Interests of the Child' " standard.

(4)     The court erred in ordering father to attend and complete a 16-week parenting without violence course.

(5)     The court erred in its "unilateral drafting and certification of [its] own settled statement" thereby "biasing the factual record" in violation of appellant's due process rights.

Father's chief claims of error concern the exclusion of evidence and the trial court's action in preparing a settled statement. We will therefore first address these two arguments.

## D.     Evidentiary Rulings

Father argues several times in his appellate briefs that the court erred by its "refusal to consider" evidence father proposed, consisting of "video footage from a body-worn camera and police reports." Father does not provide  specifics about this evidence that he proffered and which was refused by the trial court. However, from papers he filed here in support of a motion to augment the record, this court concludes that the claimed evidence consists of:  (a) video footage (37 seconds) recorded from mother's home on April 16, 2023 (identified as exhibit A); (b) video footage (58 seconds), undated, apparently involving an interaction between police and father (identified as exhibit B); (c) a San Jose Police Department document, undated, noting a report of the commission of an offense on April 16, 2023 (identified as exhibit C); and (d) a San Jose Police

Department document, undated, noting the report of the commission of an offense on December 7, 2023 (identified as exhibit D).[4]

Father asserts in his appellate briefs that this evidence was "critical." He contends that the exclusion of this evidence: (a) violated his right to due process because the court did not give him a fair opportunity to present his case; and (b) was inconsistent with the requirement under section 3022 that the family court must consider the best interests of the child in making custody orders.[5]

A claim of wrongful exclusion of evidence is governed by Evidence Code section 354, which provides: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice and it appears of record that: [¶] (a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means; [¶] (b) The rulings of the court made compliance with subdivision (a) futile; or [¶] (c) The evidence was sought by questions asked during cross-examination or recross-examination." As with all evidentiary rulings, appellate review of a trial court's order excluding evidence is governed by the abuse of discretion standard. (See

---

[4] Father filed a motion to augment with this court, seeking to include evidence he identified as exhibits A through D. He asserted that he presented these exhibits at the hearing on January 10, 2024, and the court excluded this evidence. This court granted the motion to augment.

[5] Section 3022 provides: "The court may, during the pendency of a proceeding or at any time thereafter, make an order for the custody of a child during minority that seems necessary or proper." (See *Bianka M. v. Superior Court* (2018) 5 Cal.5th 1004, 1020 [decisions "about the custody of children are to be made based on a determination of the child's best interests"]; see also *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1094.)

*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1414.)

Father's contention that the court erred in excluding evidence fails for several reasons.

First, the record does not show the foundational facts in support of father's claim, namely, that *he offered* the evidence at the hearing, and *the court rejected it*. (See *People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1304 [where record did not demonstrate that "defendant's trial counsel ever sought to introduce [witness's] testimony or that the trial court excluded it," defendant's claim of erroneous exclusion of evidence under Evid. Code, § 354 failed].) Neither the minute order nor the formal order from the January 10, 2024 hearing confirms father's claim that he offered exhibits and that they were excluded by the court. The only reference in the appellate record to any of the four items of purportedly excluded evidence is in the court's settled statement, which refers to one of the videos (exhibit A). It was recited in the settled statement that father testified that he had entered mother's home on one occasion at her request "because the child was having bathroom issues. [Father] testified that he had filmed part of the interaction with his cell phone and offered to play the video for the court. The court declined to view the cell phone video."

A party challenging a ruling by the trial court has the burden of showing reversible error by an adequate record. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 (*Ballard*).) An appellant's failure to do so results in a finding that he or she has defaulted and that the trial court's decision must be affirmed. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*).) Therefore, as to three of the items of evidence (identified by father as exhibits B through D), no appellate challenge is cognizable because the threshold matters necessary for such challenge—namely, that father offered the exhibits, and they were excluded by the trial court—find no support in the appellate record.

11

As to the fourth item (exhibit A), father's claim likewise fails because the appellate record, while minimal, is inadequate.  Under Evidence Code section 354, "a judgment may not be reversed for the erroneous exclusion of evidence unless 'the substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means.' [Citations.]" (*People v. Anderson* (2001) 25 Cal.4th 543, 580.)  As explained by one appellate court, "One aspect of [the] burden [of demonstrating error through an adequate record] requires that the appellant develop the fullest possible evidentiary record *before* seeking review.  Thus, an appellant must make an offer of proof in the trial court in order to claim on appeal that evidence was wrongly excluded.  [Citation.]  Similarly, if an appellant wishes to argue a point on appeal, it must first make a record by raising the point in the trial court.  [Citations.]" (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1433 (*Tudor Ranches*).)

Here, there is no record that father provided an offer of proof, argument, or made any other showing to the trial court of the relevance and admissibility of the video (exhibit A) which he claims on appeal was wrongfully excluded.  Accordingly, father's failure to make a record precludes his claim on appeal.  (See *Jameson*, *supra*, 5 Cal.5th at pp. 608-609; *Tudor Ranches, supra*, 65 Cal.App.4th at p. 1433.)

Second, father's arguments that the trial court erred in excluding evidence are not supported by proper (or any) citations to the appellate record.  In each appellate brief, the party is required to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."  (California Rules of Court, rule 8.204(a)(1)(C).)[6]  As an appellate court, we will deem "to be forfeited" any contention in father's briefs that is not supported by a citation to the record.  (See *In re S.C.* (2006) 138 Cal.App.4th 396, 407; see also *Yeboah v. Progeny Ventures, Inc.* (2005)

---

[6] Hereafter, all rule references are to the California Rules of Court.

128 Cal.App.4th 443, 451 (*Yeboah*) [factual statements in briefs "not supported by references to the record may be disregarded" by the reviewing court].)  Further, in this instance, father presents in his briefs facts and procedural matters that are outside of the appellate record.[7]  This violates the rule that the appellant in his or her opening brief is required to "[p]rovide a summary of the significant facts *limited to matters in the record*."  (Rule 8.204(a)(2)(C), italics added.)  "Factual matters that are not part of the appellate record will not be considered on appeal and such matters should not be referred to in the briefs."  (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 102.)

Third, even were we to overlook father's failure to procure an adequate record and to include citations to the appellate record, his claim of error nonetheless fails.  As noted above, father argues that the purportedly excluded evidence (which he identifies as exhibits A through D) was "critical" to his opposition to mother's DVRO and custody modification requests.  These repeated arguments, however, are conclusory and undeveloped.  In his briefs, father does not describe the evidence in any detail to explain why it was critical to his defense.  Rather, his position is framed in generalities.  Moreover, father cites no legal authorities that support the contention that in this instance, the purported exclusion of evidence constituted prejudicial error.

"Conclusory assertions of error are ineffective in raising issues on appeal.  [Citation.]"  (*Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 523.)  As a panel of this court has explained:  "We are not bound to develop appellants' argument for them.  [Citation.]  The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived."  (*In re Marriage of Falcone*

---

[7] Father asserted in his opening brief (without support) that "[the trial judge] refused to consider [father's] videotape evidence and police reports, stating, 'I don't want to see it.' "  As a second example, father asserted that the court "had [him] removed from the courthouse without warning, and without charging [him] with contempt."  We will disregard these statements concerning matters not found in the record.  (See *Lona, supra,* 202 Cal.App.4th at p. 102.)

13

*& Fyke* (2008) 164 Cal.App.4th 814, 830.)  Therefore, father has forfeited his claim that the trial court erred by purportedly excluding evidence generally described in his appellate briefs as "video footage from a body-worn camera and police reports."  (See *Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007 (*Berger*) [contentions made "in conclusory fashion . . . [without] a coherent argument or cit[ation of] any authority to support their contention" are forfeited on appeal].)

Fourth, it is asserted by father that the trial court's purported exclusion of evidence constituted a violation of his right to due process because the court did not give him a fair opportunity to present his case.  As we have observed, there is nothing in the record supporting father's contention that he offered, and the trial court excluded, evidence he identifies as a video and two police reports (exhibits B through D).  Moreover, because father's due process claim is conclusory, it cannot be considered by this court.  (See *People v. Weaver* (2001) 26 Cal.4th 876, 987 (*Weaver*) [claim of error that is not supported by legal argument or is merely perfunctorily asserted will not be addressed by appellate court]; *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 707 [appellate court deems forfeited appellant's unsupported claim that due process rights were violated by trial court].)[8]

Fifth, there is no showing that the trial court's purported exclusion of evidence proffered by father was prejudicial.  Regardless of whether error was shown, the appellant must also establish that the trial court's ruling was prejudicial, namely, "that a

---

[8] Father cites *Elkins v. Superior Court* (2007) 41 Cal.4th 1337 (*Elkins*) in support of his position that the purported exclusion of evidence deprived him of due process. *Elkins* is distinguishable.  It did not involve the exclusion of evidence at an evidentiary hearing.  Rather, it concerned a successful challenge to a local rule that permitted, contrary to hearsay rules, the submission of declarations in contested dissolution proceedings.  (*Id.* at pp. 1354-1357.)  Moreover, *Elkins* does not support father's due process claim.  The Supreme Court in *Elkins* held that because it concluded that the challenged local rule was contrary to the hearsay rules established under California law, it was not required to decide whether the local rule also violated litigants' due process rights.  (See *id.* at p. 1357.)

miscarriage of justice occurred as a result of its ruling. [Citations.]" (*Travelers Casualty & Surety Co. v. Employers Ins. of Wausau* (2005) 130 Cal.App.4th 99, 117; see also *Conservatorship of Farrant* (2021) 67 Cal.App.5th 370, 378 [appellant bears burden to demonstrate that the claimed error in excluding evidence was prejudicial].) As noted above, father's discussion of prejudice is inadequate, because it provides only the conclusory argument that he was prejudiced by the trial court's purported ruling because the evidence was "critical."[9]

We therefore conclude that father's contentions that the trial court erred by excluding evidence proffered by father and that these evidentiary rulings were prejudicial are without merit.

### E.    Settled Statement

Father asserts error based upon the trial court's alleged "unilateral drafting and certification of [its] own settled statement." He contends that the court acted "without considering [father's] proposed settled statement or the evidence he attempted to present," and that such action "could be seen as creating a potential bias in the factual record." Father argues that these actions violated his right to due process.

The appellant's designation of the record of oral proceedings may include an indicated intent to proceed by way of a reporter's transcript, agreed statement, or settled statement. (See rule 8.121(b)(1)(C); see also rule 8.120(b).) If the relevant court proceedings were not reported, the appellant may elect to proceed by way of a settled statement. (See rule 8.137(b)(1)(A).) The appellant's proposed settled statement must be a "condensed narrative" that includes "a concise factual summary of the evidence and the testimony of each witness relevant to the points that the appellant states . . . are

---

[9] The two San Jose Police Department documents attached to father's motion to augment (which he identified as exhibits C and D and claimed were offered at the hearing and refused by the court) do not evidence that mother was charged or arrested for any criminal activity.

15

being raised on appeal." (Rule 8.137(d)(2)(A).) A respondent, within 20 days after being served, may file its proposed amendments to appellant's proposed settled statement. (Rule 8.137(e)(1).) After service of that response or after time has elapsed to do so, any party may request a hearing, but the court need not, and "will not ordinarily order a hearing unless there is a factual dispute about a material aspect of the trial court proceedings." (*Ibid.*) In addressing a proposed settled statement and any proposed amendments, the trial court shall, if the settled statement is noncompliant, direct appellant to prepare a new proposed statement; alternatively, the court may make corrections or modifications to make the proposed statement an accurate summary or identify the proposed changes and request appellant to do so. (Rule 8.137(f)(3).) Generally, a "trial court does retain discretion to refuse to settle a statement; it need not consent to a narrative that is inaccurate, but may insist that the statement reflects the actual proceedings." (*Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 934.)

Here, the January 10, 2024 hearing was not reported, and father elected to proceed by a settled statement. (See rule 8.137(b)(1)(A).) The record—which appears to be incomplete—shows that father filed a proposed settled statement on February 22, 2024. On April 8, 2024, the trial court filed its settled statement in which it summarized the proceedings of January 10, 2024. The trial court certified the statement on April 8, 2024. (See rule 8.137(h)(1).)[10]

Father's challenge here to the settled statement that was certified by the trial court is not cognizable. Although he contends that the trial court's actions in drafting and certifying the settled statement were "unilateral," his argument is not supported by any citations to the appellate record and thus does not comply with rule 8.204(a)(1)(C). We

---

[10] Although there are no other documents concerning the settled statement process that are part of the appellate record here, a review of the register of actions discloses that there *may have been* one or more hearings or orders after the filing on February 22, 2024, of father's proposed settled statement concerning this matter.

must therefore disregard father's unsupported factual or procedural statements. (See *Yeboah*, *supra*, 128 Cal.App.4th at p. 451.) Father also does not provide citations to any legal authority to support his contention that the court erred in drafting and certifying the settled statement. He therefore forfeited the challenge. (See *Berger*, *supra*, 128 Cal.App.4th at p. 1007.) Moreover, father has failed to show by an adequate record that the trial court erred in its handling of the settled statement. (See *Ballard*, *supra*, 41 Cal.3d at p. 574.) He has therefore defaulted with respect to this challenge. (See *Jameson*, *supra*, 5 Cal.5th at pp. 608-609.)

### F. Father's Additional Arguments

The remaining appellate challenges that father asserts are tied directly to his claims that the trial court erred in allegedly excluding evidence proffered by father and by its "unilateral" drafting and certification of the settled statement. Because, as we have discussed, *ante*, these two appellate claims fail, father's remaining challenges likewise fail.

Father argues that the trial court's issuance of the DVRO "was not supported by sufficient evidence" and "was [not] justified." These contentions are conclusory and are not developed in any respect in father's appellate briefs. We cannot consider them. (See *Weaver*, *supra*, 26 Cal.4th at p. 987 [appellate court will not address claim of error unsupported by legal argument or perfunctorily asserted].) Moreover, an appellant asserting a substantial evidence challenge must " 'demonstrate that there is *no* substantial evidence to support the challenged findings.' . . . [Citations.] . . . [I]f . . . [appellant argues that] 'some particular issue of fact is not sustained, [appellant is] required to set forth . . . *all* the material evidence on the point and *not merely* [*appellant's*] *own evidence*. Unless this is done the error is deemed to be waived.' . . . [Citations.]" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881-882, original italics (*Foreman & Clark*).) Father's appellate briefs contain *no recitation* of the evidence

17

(with citations to the record) on the question of the trial court's finding that mother had established her right to issuance of the DVRO.

We also reject father's contention that the court's issuance of the DVRO was improper because mother's "allegations of rape lack[ed] corroborative evidence and were not substantiated during the hearing." Corroborating evidence of claimed abuse, while useful, is not required under the DVPA. "The testimony of one witness, even that of a party, may constitute substantial evidence. [Citation.]" (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 703.) "In many domestic violence cases, . . . the sole evidence of abuse will be the survivor's own testimony which, standing alone, can be sufficient to establish a fact. . . ." (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 119.) Furthermore, as recited in the settled statement, "[t]he [trial c]ourt found on the record that [mother] was a credible witness who had proven beyond a preponderance of the evidence that [father] had committed domestic violence as defined in Family Code section 6203." The trial court did not abuse its discretion by granting mother's DVRO request. (See *S.M.*, *supra*, 184 Cal.App.4th at p. 1264.)

Father also argues that the trial court erred in awarding mother sole physical and legal custody of the child because that finding was not supported by sufficient evidence, and because the court improperly applied the presumption under section 3044. It is clear from father's briefs that these arguments are founded upon his position that the trial court erred in allegedly excluding evidence, a contention we have rejected. Further, in making the conclusory argument that the custody order was not supported by substantial evidence, father does not recite all evidence (with citations to the record) relevant to the trial court's determination regarding custody. As appellant, he was required to do so. (See *Foreman & Clark*, *supra*, 3 Cal.3d at p. 881.) Moreover, although the presumption under section 3044 is rebuttable, there is nothing in the record as to what evidence or

arguments, if any, father presented to attempt to rebut the presumption. (See *Jaime G.*, *supra*, 25 Cal.App.5th at pp. 803-805.)[11]

As the California Supreme Court has explained: "Under California's statutory scheme governing child custody and visitation determinations, the overarching concern is the best interest of the child. The court and the family have 'the widest discretion to choose a parenting plan that is in the best interest of the child.' (Fam. Code, § 3040, subd. (b).) When determining the best interest of the child, relevant factors include the health, safety and welfare of the child, any history of abuse by one parent against the child or the other parent, and the nature and amount of contact with the parents. (§ 3011.)" (*Montenegro*, *supra*, 26 Cal.4th at p. 255, fn. omitted.) Under " 'the deferential abuse of discretion test' " applicable to review of custody and visitation orders (*ibid.*), the trial court in this instance did not err.

### III. DISPOSITION

The January 10, 2024 orders (1) granting respondent Q.P.'s request for a domestic violence restraining order under the Domestic Violence Protection Act (Fam. Code, § 6200 et seq.), and (2) granting her request for modification of custody and visitation are affirmed. Statutory costs are awarded to respondent.

---

[11] Father also apparently asserts, without supporting argument, that the court's order that he enroll in a 16-week parenting without violence program was inappropriate. We will not address this perfunctory challenge. (See *Weaver*, *supra*, 26 Cal.4th at p. 987.)

_____
BAMATTRE-MANOUKIAN, ACTING P. J.

WE CONCUR:

_____
DANNER, J.

_____
WILSON, J.

*T.B. v. Q.P.*
**H051846**