Filed 9/22/17 (unmodified opinion attached)
<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| DIRECT CAPITAL CORPORATION, | C081349 |
| Plaintiff and Respondent, | (Super. Ct. Nos. STK-CV-UBC-2014-0006707, 39-2014-00313250-CU-BC-STK) |
| v. | |
| GRANT BROOKS, | MODIFICATION OF OPINION |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on August 30, 2017, be modified as follows:

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part II.

1

1. On page 9 in footnote 6, the last sentence of the footnote should be deleted and replaced with a sentence reading: "However, counsel should supply correct citations to LEXIS or Westlaw, unless they are not available in those or similar databases, in which case they should be presented by way of judicial notice." The footnote shall now read:

**6.** Grant cites to *Arevalo* as "*U.S.A. v. Arevalo* (2007) C-99-01143M-EDL." The limitations on citing unpublished California cases (see Cal. Rules of Court, rule 8.1115) do not apply to unpublished federal cases (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1096, fn. 18). However, counsel should supply correct citations to LEXIS or Westlaw, unless they are not available in those or similar databases, in which case they should be presented by way of judicial notice.

2. On page 9, the citation to the *Arevalo* case in the first sentence of the first paragraph should be deleted and replaced with the citation "*U.S. v. Arevalo* (N.D.Cal., Aug. 1, 2007, C-99-01143M EDL) 2007 U.S. Dist. LEXIS 58724." The sentence shall now read:

Grant cites an unpublished federal court case, *U.S. v. Arevalo* (N.D.Cal., Aug. 1, 2007, C-99-01143M EDL) 2007 U.S. Dist. LEXIS 58724 to support his contention about the meaning of the phrase "necessaries of life."

This modification does not change the judgment.

FOR THE COURT:

_____/s/_____
Blease, Acting P. J.

_____/s/_____
Nicholson, J.

_____/s/_____
Duarte, J.

Filed 8/30/17 (unmodified version)

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| DIRECT CAPITAL CORPORATION, | C081349 |
| Plaintiff and Respondent, | (Super. Ct. Nos. STK-CV-UBC-2014-0006707, 39-2014-00313250-CU-BC-STK) |
| v. | |
| GRANT BROOKS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Joaquin County, Linda L. Lofthus, Judge.  Affirmed.

Law Offices of Douglas S. Srulowtiz and Douglas S. Srulowitz for Defendant and Appellant.

Ferns Adams & Associates and Amanda N. Ferns for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part II.

1

Disregarding procedural asides raised by the parties, this appeal turns on the distinction between "necessaries of life" and "common necessaries of life" as those phrases are used in different parts of Family Code section 914,[1] and which of the two governs when a person is or is not liable for a debt incurred by a spouse. Here, the trial court found that a debt incurred by an attorney-spouse for office computer equipment was for the necessaries of life for that particular marriage, in part because that spouse's law practice generated community property income. We shall uphold this finding.

In the published portion of this opinion, we discuss the distinction between necessaries of life, and common necessaries of life. Although long extant, the distinction has not been recently discussed, and--as evidenced by the briefing in this case--can be confusing. (See Rules of Court, rule 8.1105(c)(3) & (8).) In the unpublished portion of this opinion, we consider and reject the non-debtor spouse's claim that we should interpret and apply the terms of a divorce judgment entered after the notice of appeal was filed, because issues arising from that judgment are more properly considered by the trial court in the first instance.

Accordingly, we shall affirm the order from which this appeal was taken.

## BACKGROUND

In 2013, plaintiff Direct Capital Corporation (DCC) leased computer equipment to a since-disbarred Kansas attorney (Mary Brooks, with many aliases, hereafter Mary) who practiced immigration law in Stockton.[2] After Mary did not pay, DCC sued her and obtained a judgment for nearly $40,000. DCC later moved to garnish the wages of her husband, attorney Grant Brooks (Grant). DCC alleged that when the debt was incurred,

---

[1] Undesignated statutory references are to the Family Code.

[2] Because Mary and Grant share the same surname, we refer to both by their first names in order to avoid confusion.

2

the marriage was intact, and the judgment thereon (grown to over $43,000 with interest) was a community obligation.

At the hearing on DCC's motion held on November 13, 2015, Grant's attorney specially appeared and represented to the court that Grant had filed for divorce the day before, and claimed this deprived the trial court of "jurisdiction" to garnish Grant's wages. The court continued the matter and directed Grant to file an opposition to DCC's motion. Instead, Grant's attorney purported to make a special appearance to dismiss the matter "for lack of jurisdiction," again alleging Grant had filed for divorce on November 12, 2015. Grant also argued that because computers were not necessaries of life as used in section 914, his separate property wages were not subject to garnishment therefor. The court treated the dismissal request as an opposition to DCC's motion, and DCC filed a reply, in part claiming the divorce was a sham to defraud creditors.

After a hearing, the trial court found the debt was a community property obligation, and "there is evidence that the Computers were for necessities of life as it went to the wage earnings for the community." The court denied the motion to dismiss, and issued a garnishment order. The court then stayed that order, pending this appeal.

Grant timely appealed from the garnishment order.

Later, a divorce judgment was entered, and at Grant's request we took judicial notice of the relevant documents showing the terms thereof.

**DISCUSSION**

I

*Grant's Liability for the Computers*

We disregard the irregularities in Grant's briefing, and the various ways in which DCC argues Grant has forfeited his contentions, and address the central merits of Grant's appeal. His first claim is that the trial court erred in finding him liable for the debt based on the computers leased by Mary. As we explain, we find no error.

3

Generally, a spouse's separate property is not liable for debts incurred by the other spouse during marriage. (§ 913, subd. (b)(1).) But section 914, subdivision (a) provides:

> "Notwithstanding Section 913, a married person is personally liable for the following debts incurred by the person's spouse during marriage:

> "(1) A debt incurred *for necessaries of life* of the person's spouse *before the date of separation* of the spouses.

> "(2) Except as provided in Section 4302, a debt incurred for *common necessaries of life* of the person's spouse *after the date of separation* of the spouses." (Italics added.)

Thus, "[s]ection 914 is an exception to the general rule that a married person's separate property is not liable for debts incurred by his or her spouse during marriage." (*Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 309 (*Rumsey*).) It does not hinge on the separate or community nature of the non-debtor spouse's property, but instead ascribes liability to "a married person" for specified debts incurred by the debtor-spouse, with different language for debts incurred pre- and postseparation.[3]

It is not disputed that the debt was incurred while Mary and Grant were married and before they separated, therefore section 914, subdivision (a)(1) provides that Grant is liable for the debt if it was for necessaries of life, as the trial court found it was.

Because section 914 uses the phrases "necessaries of life" and "common necessaries of life" respecting different time periods (before or after the date of separation), respondent correctly contends that a different meaning is intended by the two phrases. (See 11 Witkin, Summary of Cal. Law (10th ed. 2005) Community Property, § 180, pp. 759-760; Cal. Community Property with Tax Analysis (LEXIS, 2017)

---

[3] "Technically, there is no such thing as a 'community debt.' The question is whether community property [or separate property] is liable for enforcement of the debt." (Matthew Bender Practice Guide: Cal. Debt Collection and Enforcement Judgment (2016) § 1.42[5][a], p. 1-38; see Ahart, Cal. Pract. Guide: Enforcing Judgments and Debts (The Rutter Group 2016) ¶ 3:21, p. 3-12.)

Liabilities for Debt, § 4.03[3][a], p. 4-9.)  In construing a different former statutory scheme involving exemptions from collection, also using the term "common necessaries," one court explained the difference between these two phrases as follows:

> "Briefly, appellant argues that an automobile is a common necessary of life, as a matter of law, because it is the means of transportation normally used by people to earn a living and to purchase groceries and other items substantially necessary to sustain life.  He also argues that even if an automobile is not a common necessary of life, as a matter of law, it becomes one if it is actually used by the owner to go to and from work or to shop for groceries.
>
> "The term 'necessaries' as applied to the requisites of life is a relative term. It is not, in short, confined to what is absolutely essential to support life, but when used in the broad sense encompasses many of the conveniences of a refined society [citation].  However, in excepting debts incurred for the requisites of life from the exemption accorded to a debtor's earnings, [former Code Civ. Proc.] section 690.11 does not refer to 'necessaries' in the broad sense.  On the contrary, the phrase 'necessaries of life' is preceded by the word 'common' and *this in turn connotates such things as are ordinarily required for the sustenance of all men.* Thus, [*Los Angeles Finance Co. v. Flores* (1952) 110 Cal.App.2d Supp. 850] held that the decision as to whether an article is a common necessary of life under [former Code Civ. Proc.] section 690.11 'involves a determination of whether or not it is such an article that *in the hands of anyone* it is to be regarded universally or substantially so, as necessary to sustain life.'  *The court also rejected the concept that something which is not of itself a common necessary of life becomes one if it is used to earn a living.*  At page 856 of the opinion the court stated:  'A tuxedo may be necessary wearing apparel to a waiter at a top-notch cafe, but not to a laborer who has never attended a type of dinner or other gathering where tuxedos are customarily worn; and under no circumstances could it be called a "common necessary of life." '
>
> "We are constrained to follow the rationale of the *Flores* case.  The well-reasoned decision soundly applies basic rules of statutory construction and correctly interprets the legislative intent.  Because of the availability of public transportation, home delivery service and neighborhood shopping centers, to the great majority of Americans *the automobile, albeit a great convenience, is not necessary to sustain life* and cannot be viewed as a 'common necessary of life' within the contemplation of [former] section 690.11 of the Code of Civil Procedure.]" (*Ratzlaff v. Portillo* (1971) 14 Cal.App.3d 1013, 1015-1016, some italics added.)

5

The distinction between necessaries and common necessaries as discussed in *Ratzlaff* was cited by the Law Revision Commission when it recommended that the Legislature adopt the predecessor to section 914.**4** (See Recommendation Relating to Liability of Marital Property for Debts (Jan. 1983) 17 Cal. Law Revision Com. Rep. (1983) pp. 20-21 & fn. 49.) Therefore we presume the Legislature intended that that distinction between necessaries and common necessaries should persist. (See *Estate of Joseph* (1998) 17 Cal.4th 203, 210-211, fn. 1 [relying on Law Revision Commission report to show legislative intent]; *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 36 [such reports are cognizable].)

Thus, while common necessaries are those that *all* families need (e.g., food, clothing, & shelter), what constitutes necessaries depends on the circumstances of the particular marriage. The "station in life" test applies if the debt was incurred pre-separation. (See Recommendation Relating to Liability of Marital Property for Debts , *supra*, 17 Cal. Law Revision Com. Rep. (1983) p. 35 ["Subdivision (a)(2) [applicable *post*separation] abolishes the 'station in life' test of cases such as *Wisnom v. McCarthy* [(1920)] 48 Cal.App. 697"; by implication, *retaining that test* for *pre*-separation debts].)**5**

---

**4** The predecessor was former Civil Code section 5120.140, enacted in 1984. (Stats. 1984, ch. 1671, § 9, p. 6020; see *Rumsey*, *supra*, 24 Cal.4th at p. 311.) Long before that, former Civil Code section 174 provided: "If the husband neglects to make adequate provision for the support of his wife, any other person may, in good faith, supply her with articles necessary for her support, and recover the reasonable value of thereof from the husband." (1 Ann. Civ. Code, § 174 (1st ed. 1872, Haymond & Burch, commrs., annotators) p. 59.) The meaning of "necessary" or "necessaries" in California was discussed in many California cases predating the 1984 statutory revision, and we presume the Legislature was aware of those decisions. (See *Estate of McDill* (1975) 14 Cal.3d 831, 839.)

**5** This debt was incurred when the lease was signed in 2013. (§ 903; see *In re Marriage of Feldner* (1995) 40 Cal.App.4th 617, 619, 622-624.) Grant was not yet separated at that time.

6

The station in life test looks to the marital standard and mode of living. Thus, in *Wisnom*, the court explained: "The plaintiff pleaded and proved that the services were necessaries of life *for persons in the economic and social position of the defendants*; that they were partly rendered while the husband and wife were living together, and partly after he had deserted her without cause and was not furnishing such necessaries for her. Under such facts the husband would be liable for the expenses of his household." (*Wisnom v. McCarthy* (1920) 48 Cal.App. 697, 700, italics added; see *In re Marriage of Higgason* (1973) 10 Cal.3d 476, 488 ["to the extent that the husband's obligations were incurred during the time the parties were living together and were reasonably necessary for his support *according to the parties' station in life* [citations], the wife owes a duty to provide such support," italics added], disapproved on another ground in *In re Marriage of Dawley* (1976) 17 Cal.3d 342, 346, 352; *Shebley v. Peters* (1921) 53 Cal.App. 288, 293 [wrongful death damages "suitable to [decedent's] station in life"]; Bassett, Cal. Community Property Law (2017 ed.) § 9:29, pp. 970-971 ["what constitutes 'necessaries' is often broadly interpreted" and "may be measured by the income and life circumstances of the family, including vacation, entertainment, etc."].)

One court that surveyed a number of cases concluded as follows:

> "Under the rule prevailing [in California], what is a necessary of life must depend largely on the circumstances of each case and the position of the family involved. What is or what is not a necessary, must, to a considerable extent, be committed to the sound discretion of the trier of fact. Under the facts of this case and the law as it exists in California we can see no abuse of discretion in the decision rendered by the trial judge in holding that the various items of expense involved here were for necessaries of life." (*Sanker v. Humborg* (1941) 48 Cal.App.2d 205, 208 [in part upholding "music lessons for the children" as one of that particular family's necessaries].)

The trial court found Mary's former law practice generated community income, and that computers were necessary to operate her law practice. To the extent that was a finding about the marital station in life, such finding is reviewed with at least some level

7

of deference. (See *Sanker v. Humborg*, *supra*, 48 Cal.App.2d at p. 208 [abuse of discretion standard applied]; cf. *Schwartzman v. Wilshinsky* (1996) 50 Cal.App.4th 619, 626 [denial of claim of exemption reviewed for substantial evidence]; see *Series AGI West Linn of Appian Group Investors DE, LLC v. Eves* (2013) 217 Cal.App.4th 156, 163 [same].)

A modern law practice entails a lot of paperwork, which commonly includes computerized forms. Frankly, it is difficult to imagine a reasonable attorney beginning or maintaining a California law practice without a computer. But it is not our call to make in the first instance: The trial court judge, who was in the best position to determine the needs of a law office in her own county, found in this case that Mary's specific law office needed computers. We will not disturb that finding. (Cf. *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [an experienced trial judge is the best judge of the value of professional services rendered in his or her court].)

Grant argues: "Long before computers were invented, lawyers, doctors, and other professionals were able to run their practice and support their families without using a computer. Even at the present date, computers in a law practice are convenient but not required to stay in business. They are not a necessary of life." That view both ignores the thrust of cases emphasizing the distinction between necessaries and common necessaries as used in the statute, as we have explained, and also gives no deference to the trial court's ability to determine what is necessary for a particular marriage. Later, Grant faults the trial court for reasoning that because the computers aided Mary's law firm, they contributed to the marriage's finances. However, we think that was an appropriate factor to consider. The marital station in life included the operation of Mary's law practice, and as explained, whether that required computers was a matter within the trial court's bailiwick to decide in the first instance.

Grant cites an unpublished federal court case, *U.S. v. Arevalo* 2007 U.S. Dist. LEXIS 58724 1, at pages 5-6 to support his contention about the meaning of the phrase "necessaries of life."**6**  As we shall explain, *Arevalo* cuts against his position.

*Arevalo* construed the scope of an exception to exemptions applicable to debts "for the common necessaries of life furnished to the judgment debtor or the family of the judgment debtor."  (Former Code Civ. Proc, § 706.051, subd. (c)(1); added by Stats. 1982, ch. 1364, § 2, p. 5176.)  The issue was whether higher education expenses for a child were common necessaries, and in answering no, *Arevalo* reasoned as follows:  "The 'common necessaries of life' exception is construed narrowly and 'does not refer to "necessaries" in the broad sense.'  [Citing *Ratzlaff*.]  Instead, the exception covers only expenses 'required for the sustenance of *all* men.'  [Citing *Ratzlaff*.]  A *common* necessary is 'an article that *in the hands of anyone* it is to be regarded universally or substantially so, as necessary to sustain life.'  [Citing *Ratzlaff* and *Flores*.]  An education, particularly the chef's training at issue here, while useful, is not universally necessary to sustain life.  Accordingly, the 'common necessaries of life' exception does not apply." (*U.S. v. Arevalo*, *supra*, 2007 U.S. Dist. LEXIS 58724 at pp. 5-6.)  Thus, contrary to Grant's view, *Arevalo* hews to the *Ratlaff-Flores* distinction between necessaries and common necessaries.

To further illustrate this point, *Diamond v. Bent* (1957) 157 Cal.App.2d Supp. 857, held that higher education expenses for the debtor's adult child (age 21)--no longer legally required to be supported by the parent--did not qualify as one of the necessaries of life, but that such costs for the debtor's minor children (then, aged 18 and 20), did so

---

**6** Grant cites to *Arevalo* as "U.S.A. v. Arevalo (2007) C-99-01143M-EDL."  The limitations on citing unpublished California cases (see Cal. Rules of Court, rule 8.1115) do not apply to unpublished federal cases (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1096, fn. 18).  However, counsel should supply such obscure authorities by way of judicial notice or, at minimum, with correct citations to LEXIS or Westlaw.

9

qualify, and remanded for the trial court to adjust the debtor's withholding exemption claim accordingly. (*Id*. at pp. 859-860.) These outcomes highlight the difference between common necessaries (*excluding* higher education expenses, as in *Arevalo* and as to the adult child in *Diamond*) and necessaries (*including* such expenses, if consistent with the family's station in life, as was the case for the minor children in the family in *Diamond*).[7]

In short, Grant's argument conflates common necessaries with necessaries, as does DCC's briefing at times. Because Grant does not claim he was separated from Mary at the time the debt was incurred, DCC only had the burden to show that necessaries were provided, a much broader--and more fact specific--category than common necessaries, as we have explained.

Accordingly, because the trial court's finding that computers were necessary for the operation of Mary's law practice (which contributed to the marital fisc) is supported by the record, the trial court properly granted DCC's motion to garnish Grant's wages.

II

*The Divorce Judgment*

Relying on the divorce judgment entered *after* the notice of appeal was filed, Grant claims that because Mary assumed all liability arising from her law practice, he is not liable therefor, and this in effect trumps the garnishment order. He bases this claim

[7] Grant also in part relies on *Leasefirst v. Borrelli* (1993) 13 Cal.App.4th Supp. 28, but that case is distinguishable. The marriage was intact, and the non-debtor spouse earned income to support the family, although the parties had a valid prenuptial agreement that kept each spouse's earnings the separate property of that spouse. (*Id*. at pp. 29-31.) The court reversed a wage garnishment, explaining: "*There is no suggestion that the debt was incurred for the necessaries of life*. Therefore, Nancy Borelli's separate property is not liable for this debt of her husband." (*Id*. at p. 31, italics added.) Because that case did not involve alleged necessaries of life, it has no relevance herein. "Cases are not authority for propositions not considered." (*Siskiyou County Farm Bureau v. Department of Fish & Wildlife* (2015) 237 Cal.App.4th 411, 437, fn. 11.)

10

on section 916, limiting the liability of a non-debtor spouse postdivorce, when a debt has been assigned to the other spouse.  In support, he also cites *CMRE Financial Services, Inc. v. Parton* (2010) 184 Cal.App.4th 263 (*CMRE Financial*), which at first glance generally supports his view of the law.  (*Id*. at pp. 267-268.)

But although we took judicial notice of the divorce judgment, it does not change our analysis in Part I, affirming the order from which this appeal was taken.  If that judgment renders Grant's salary immune from garnishment--a point contested by DCC-- that is a matter Grant can raise in the trial court in the first instance, by a motion to modify or vacate the order.  "Matters occurring after entry of judgment are ordinarily not reviewable.  The appeal reviews the correctness of the judgment or order as of the time of its rendition, leaving later developments to be handled in subsequent litigation."  (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 337; see *In re Zeth S.* (2003) 31 Cal.4th 396, 405 [" 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court' "].)

Moreover, even if Grant's interpretation of section 916 were correct, because of the ruling on necessaries of life, the trial court had no need to address DCC's claim that the divorce was a sham to defraud creditors.  Section 916 will not protect a non-debtor spouse where a divorce is structured to defraud creditors.  (See *Mejia v. Reed* (2003) 31 Cal.4th 657, 663-669; *CMRE Financial*, *supra*, 184 Cal.App.4th at pp. 268-269.)  Therefore it is not certain that the divorce judgment--even if it ordinarily would carry the force ascribed to it by Grant--would vitiate the garnishment order.  That is a fact-based issue for the trial court to resolve in the first instance, should Grant move to modify or vacate the extant order.

11

## DISPOSITION

The garnishment order from which this appeal was taken is affirmed, without prejudice to a motion in the trial court to vacate or modify it.  Grant shall pay DCC's costs of this appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)


                                                          /s/_____
                                                         Duarte, J.

We concur:


_____/s/_____
Blease, Acting P. J.


_____/s/_____
Nicholson, J.