Filed 4/14/25  Marriage of Craig CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| In re the Marriage of SARAH and RYAN CRAIG. | C096950 |
| SARAH CRAIG, | (Super. Ct. No. PFL20170099) |
| Respondent, | |
| v. | |
| RYAN CRAIG, | |
| Appellant. | |

This appeal is from a judgment in a marital dissolution action.  The issue on appeal concerns whether appellant Ryan Craig (Ryan),[1] proceeding pro se, should be required to reimburse respondent Sarah Craig (Sarah) for one-half of the community

---

[1]     Given the shared surname, we will refer to parties by their first names.  No disrespect is intended.

1

funds that Ryan unilaterally removed from the parties' joint account and used for his own benefit. At trial, Ryan claimed that because he used the funds to pay his living expenses and other community obligations during the marriage and before their date of separation, he should not be required to reimburse the community for the funds that he used. Instead, the trial court should simply divide whatever funds remained on the date of separation. The trial court disagreed, finding that Ryan wrongfully removed community funds from the joint bank account and thereafter failed to prove that he used those funds for the benefit of the community. Therefore, the trial court ordered Ryan to reimburse Sarah for her share of the missing community funds, with prejudgment interest.

We conclude the trial court erred in ordering Ryan to reimburse the portion of the funds that he indisputably spent on his attorney but find no other error. Thus, we will modify the judgment and affirm the judgment as modified.

BACKGROUND FACTS AND PROCEDURE

Sarah and Ryan were married in July 2006. As of the beginning of 2014, they had three minor children (born in 2008, 2010, and 2011) and were living in Florida. On April 10, 2014, Sarah left Ryan and moved to California with the children. On February 10, 2017, Sarah filed a petition for legal separation. In December 2020, she filed an amended petition for dissolution of marriage.

On August 17, 2021, the trial court held a bifurcated trial to resolve issues relating to the date of separation and the division of property. At trial, Sarah asserted that the date of separation was April 10, 2014, which is the date she and the children left for California. Although she attended a few marital counseling sessions after that date, she testified that she felt pressured to do so and did not believe she was still in a relationship with Ryan. She believed their relationship was terminated, albeit with a possibility of reconciliation.

Regarding the division of the community estate, Sarah testified that as of April 2014, the parties had a joint bank account containing approximately $83,000 in funds

2

accumulated during their marriage. She testified that in May 2014, Ryan removed the funds from the joint bank account and placed them in an account solely in his name. Sarah testified that, from 2014 to 2017, she did not have access to the funds, and Ryan did not provide any financial assistance to her or the children, other than paying (an unspecified amount) for health insurance (and possibly car insurance) in 2014. She testified that she eventually received $8,000 from Ryan (one-half of the $16,000 remaining in his account) after the filing of a petition for legal separation in 2017. Because Ryan used $67,000 in funds that originally were in their joint bank account, Sarah argued that the trial court should order Ryan to reimburse her one-half of that amount.

Ryan, in response, argued that the date of separation should be March 14, 2017, because prior to that date, he and Sarah were still attempting reconciliation. As for the funds in the joint bank account, Ryan admitted that their joint bank account contained approximately $83,000 in April 2014.[2] He also admitted that in May 2014 he moved the funds into an account held solely in his name, depriving Sarah of access to the funds. He further admitted that, during the period from 2014 to 2017, he used approximately $67,000 of the funds in that account ($83,000 less the $16,000 remaining in 2017). He testified that he used a small (unspecified) portion of the funds to pay living expenses for Sarah and the children, consisting of "a few months of health insurance" and possibly car insurance. He also testified that he used most of the funds to pay his own living expenses, including $14,690 in attorney fees, because he was unemployed from 2014 to 2019. He did not provide any documentation to support the amount of his living expenses. Ryan admitted that he did not transfer any of the funds to Sarah, but he

---

[2]     Although Ryan claimed that a portion of the $83,000 was separate property, he was unable to provide any evidence to support this claim.

3

testified that he offered to support Sarah (and the children), who rejected his offers. Sarah denied any offers of support were made.

On September 23, 2021, the trial court issued its statement of decision. The court found the date of separation to be February 10, 2017, because the evidence showed that was the point at which Sarah decided to end the marriage and file a petition for legal separation. The court also ordered Ryan to reimburse Sarah for one-half of the funds that he unilaterally transferred and "used for his sole benefit." The court found that the funds were community property; that Ryan deprived the community of the benefit of those funds by transferring them into his separate bank account; and that Ryan used $67,000 of the funds for his sole benefit and not for the benefit of the community. Therefore, the court ordered Ryan to pay Sarah $33,500—her community property share of the $67,000—plus prejudgment interest in the amount of $23,450, for a total amount due from Ryan to Sarah of $56,950, payable in $500 monthly installments until paid in full.

On March 22, 2022, the parties entered a stipulation and order to terminate the marital status and allow judgment to be entered thereon.[3]

On May 11, 2022, judgment was entered on the termination of marital status and the issues decided in the September 2021 statement of decision. Ryan timely appealed the judgment.

---

[3]    As part of the stipulation, the parties requested that the entire case be sealed, and the trial court seemingly approved that request. This court gave the parties notice of its intent to unseal the record on appeal along with Ryan's unredacted opening brief. No opposition to this court's notice was filed. On March 7, 2025, the record on appeal and Ryan's unredacted opening brief were ordered unsealed.

DISCUSSION

I

*Division of Property*

This appeal relates to the trial court's division of community property, which we review for an abuse of discretion.  (*In re Marriage of Schleich* (2017) 8 Cal.App.5th 267, 276; *In re Marriage of Honer* (2015) 236 Cal.App.4th 687, 693-694.)  Ryan argues that the trial court erred in ordering him to reimburse Sarah for one-half of the community funds that he transferred and used for his benefit.  As explained below, we disagree.

A.    *Legal Principles*

The starting point for the division of property in a marital dissolution proceeding is the requirement to "divide the community estate of the parties equally."  (Fam. Code, § 2550.)[4]  The court must distribute the assets and obligations of the community such that the residual net assets awarded to each party are equal.  (*In re Marriage of Peterson* (2016) 243 Cal.App.4th 923, 935-936.)  Pursuant to section 2552, the community assets and liabilities ordinarily must be valued "as near as practicable to the time of trial." (§ 2552, subd. (a).)  Nevertheless, for good cause shown, the trial court may value an asset or liability at an alternate date (after separation and before trial) where necessary to accomplish an equal division of the estate.  (§ 2552, subd. (b); *In re Marriage of Nelson* (2006) 139 Cal.App.4th 1546, 1550.)

The general rule mandating an equal division of the community estate is subject to several exceptions.  (See, e.g., §§ 2600-2605, 2627, 2641.)  One such exception applies when a spouse is found to have "deliberately misappropriated" community assets.  In such a situation, the Family Code provides that the court "may award, from a party's share, the amount [it] determines to have been deliberately misappropriated by the party to the exclusion of the interest of the other party in the community estate."  (§ 2602; *In re*

---

[4]    Undesignated section references are to the Family Code.

*Marriage of Economou* (1990) 224 Cal.App.3d 1466, 1483 [predecessor statute]; see *In re Marriage of Schultz* (1980) 105 Cal.App.3d 846, 855 [deliberate misappropriation refers to "calculated thievery," not negligent mishandling of assets].)

Similarly, the community may be entitled to reimbursement when one spouse uses community property to pay a separate debt, or improve a separate asset, without the other spouse's knowledge and consent. (*In re Marriage of Beltran* (1986) 183 Cal.App.3d 292, 294; accord, *In re Marriage of Nevai & Klemunes* (2020) 59 Cal.App.5th 108, 116-117; *In re Marriage of Hirsch* (1989) 211 Cal.App.3d 104, 109; *In re Marriage of Frick* (1986) 181 Cal.App.3d 997, 1014; *In re Marriage of Warren* (1972) 28 Cal.App.3d 777, 784.)

In addition, because spouses occupy a fiduciary relationship with each other in the management and control of community assets (*In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 343-344), a spouse may be required to reimburse the community for mismanaging or misusing community assets in breach of that duty. (*In re Marriage of Gilbert-Valencia & McEachen* (2023) 98 Cal.App.5th 520, 526; *In re Marriage of DeSouza* (2020) 54 Cal.App.5th 25, 31-33; *In re Marriage of Kamgar* (2017) 18 Cal.App.5th 136, 143-148; *In re Marriage of Prentis-Margulis & Margulis* (2011) 198 Cal.App.4th 1252, 1269-1272 (*Margulis*); *In re Marriage of Leni* (2006) 144 Cal.App.4th 1087, 1091-1092; *In re Marriage of Czapar* (1991) 232 Cal.App.3d 1308, 1318; §§ 721, 1100, subds. (b) & (e).)

B.     *Analysis*

It was undisputed that, shortly after Sarah left, Ryan unilaterally transferred approximately $83,000 from the parties' joint bank account to his own account. It also was undisputed that, before the date of separation, Ryan withdrew all but $16,000 of the funds in that bank account, equating to about $67,000. Although Ryan testified that he used the withdrawn funds for the benefit of the community, the trial court was not

6

persuaded. Accordingly, the court ordered Ryan to reimburse Sarah for her one-half share of the depleted community funds.

On appeal, Ryan contends that the trial court erred in ordering him to reimburse Sarah for her share of the depleted funds. He argues, as he did below, that his uncontradicted testimony shows he used most of the depleted funds to pay his living expenses and attorney fees, and the remainder to pay family health insurance and possibly car insurance expenses. He argues that because his expenditures benefitted the community during marriage and before the date of separation, there was no basis to require him to reimburse Sarah for the missing funds. He argues that the trial court should have simply divided the funds remaining in the account at the date of separation.

We begin by observing that "[t]he distinctive feature of California marital property law is that the marital community is viewed as a partnership in which the spouses are equal partners." (*In re Marriage of Brigden* (1978) 80 Cal.App.3d 380, 389.) During the marriage, both spouses have an equal right of management and control of community property, including the "absolute power of disposition" of community personal property. (*Ibid.*; §§ 751, 1100, subd. (a).) Ordinarily, therefore, when a spouse spends community funds during the marriage and before the date of separation (§§ 70, 910), there is a presumption that the expenditure benefitted the community. (See § 760.) The burden of proving that the spouse misappropriated or misused community assets for his or her own personal benefit falls on the other (aggrieved) spouse who is seeking reimbursement. (*In re Marriage of Feldner* (1995) 40 Cal.App.4th 617, 625; see *Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1429-1430; *In re Marriage of Moore* (1980) 28 Cal.3d 366, 375; Evid. Code, § 500.)

However, courts " 'may alter the normal allocation of the burden of proof' based on considerations of fairness and policy." (*Margulis, supra*, 198 Cal.App.4th at p. 1267.) In determining whether to reallocate the burden of proof on a particular issue, courts consider a variety of factors: The knowledge of the parties concerning the fact, the

7

availability of the evidence to the parties, the most desirable result in terms of public policy in the absence of proof of the fact, and the probability of the existence or nonexistence of the fact. (*Id*. at p. 1268; *In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 537.)

In *Margulis*, the Fourth Appellate District, Division Three, addressed how to allocate the burden of proof and account for the disposition of assets that were missing from the community estate at the time of property division. (*Margulis, supra*, 198 Cal.App.4th at pp. 1257-1258; *In re Marriage of Mohammadijoo & Dadashian* (2024) 102 Cal.App.5th 392, 398 (*Mohammadijoo*).) In *Margulis*, during 33 years of marriage and 12 years of separation, the husband exercised "complete control" over the couple's finances, which included a substantial investment portfolio. (*Margulis,* at pp. 1257-1259.) By the time of the property division, however, the husband disclosed that the "once-brimming investment accounts were virtually empty." (*Id*. at p. 1257.) Without any corroborating evidence, he attributed the depletion of the accounts to "proper expenditures and stock market losses." (*Ibid*.) The wife argued that the court should charge the husband with the missing funds unless he proved a proper disposition of the assets. The court disagreed, rejecting the wife's argument that the husband bore the burden of accounting for the missing funds. (*Id*. at pp. 1265-1266.)

The appellate court reversed, holding that when a non-managing spouse makes a prima facie showing that community assets have disappeared while in the control of the other spouse post-separation, the managing spouse should have the burden of proof to account for the missing assets.[5] Failing such proof, the managing spouse should be

---

[5] Although *Margulis* speaks of shifting the burden of *proof*, the court used language in a footnote suggesting the evidentiary burden is more properly characterized as a rebuttable presumption affecting the burden of *production*. (*Margulis, supra*, 198 Cal.App.4th at p. 1273, fn. 11; see *In re Marriage of Hein, supra*, 52 Cal.App.5th at p. 538; *Rancho Santa Fe Pharmacy, Inc. v. Seyfert* (1990) 219 Cal.App.3d 875, 883.) Because the trial court found Ryan failed to produce sufficient evidence to support a

charged with the value of the missing assets. (*Margulis, supra*, 198 Cal.App.4th at pp. 1257-1258, 1267.) In reaching this decision, the court relied upon equitable principles that justify shifting the burden of proof when one party has unequal access to evidence necessary to prove a disputed issue. (*Id*. at pp. 1267-1268, 1277.) The court also relied on the fiduciary duties between spouses that attach during marriage and continue after separation. (*Id*. at pp. 1269-1272.) The court explained that, taken together, these provisions impose on the managing spouse an affirmative duty to disclose and account for the existence, valuation, and disposition of community assets through the date of final property division. (*Id*. at pp. 1270-1271, 1280; see *Mohammadijoo, supra*, 102 Cal.App.5th at pp. 397-398, 405-406.)

Sarah cites *Margulis* in support of her argument that Ryan had the burden of proof to account for the missing community funds. We agree. Sarah met her prima facie burden by showing that Ryan wrongfully transferred, and then used, approximately $67,000 in community funds previously held in the parties' joint bank account.[6] Under the *Margulis* burden-shifting framework, this was sufficient to shift to Ryan, as the party with exclusive management and control of the wrongfully transferred funds, the burden to account for the missing assets and prove that they were used for the benefit of the community. (*Margulis, supra*, 198 Cal.App.4th at pp. 1265-1267, 1269, 1271-1272.)

---

finding in his favor, we find it unnecessary to decide whether the burden-shifting affects the burden of proof or the burden of production.

[6]     Ryan emphasizes that Sarah never demanded the return of the funds. We construe this to be an argument that Sarah implicitly consented to him keeping and using the funds for *any* purpose. Assuming that Ryan did not forfeit this argument by failing to raise it below, we conclude it lacks merit. Ryan did not testify that Sarah made no demand for the funds; he testified that he "d[id] not recall" whether she asked for the funds. While Ryan testified that he offered financial support to Sarah and the children, the evidence on this point was conflicting. The trial court did not abuse its discretion by resolving this evidentiary conflict in Sarah's favor.

We acknowledge that *Margulis* involved a dissipation of community assets *after* the date of separation, but we see no reason the same burden-shifting framework should not also apply to pre-separation, at least where there is evidence of mismanagement or misappropriation giving one spouse vastly unequal access to the relevant records and information. (See *In re Marriage of Lister,* 152 Cal.App.3d 411, 417-419; *In re Marriage of Kamgar, supra*, 18 Cal.App.5th at pp. 143-148; *Williams v. Williams,* (2021) 14 Cal.App.3d 560, 567; see also *Mohammadijoo, supra*, 102 Cal.App.5th at pp. 405-407.) As *Margulis* recognizes, the fiduciary duties between spouses attach during marriage and continue until the final division of property. (*Margulis, supra*, 198 Cal.App.4th at pp. 1269-1272.) Accordingly, we conclude the trial court did not abuse its discretion in shifting to Ryan the burden to account for the missing funds and rebut the presumption of misappropriation.

To meet that burden, Ryan was not required to show that his expenditures were wholly selfless. Because spouses owe each other a mutual duty of support, the community estate is liable for debts incurred for the support of either spouse during marriage. (§§ 70, 720, 4300, 4301; *In re Marriage of Stimel* (1996) 49 Cal.App.4th 991, 994-995.) This mutual promise of support is an "implicit obligation" of the marriage relationship. (*Boyd v. Boyd* (1964) 228 Cal.App.2d 374, 379.) It encompasses the obligation to pay debts incurred for "necessaries of life" before the date of separation and, except as provided in section 4302,[7] for "common necessaries of life" after the date of separation. (§§ 910, 914, 3580, 4302.)

---

[7] Section 4302 provides that "[a] person is not liable for support of the person's spouse when the person is living separate from the spouse by agreement unless support is stipulated in the agreement." (§ 4302.) Absent such an agreement, each spouse remains liable for debts incurred by the other for the common necessaries of life, even after the date of separation, whether the spouses are living together or apart. (§§ 914, subd. (a)(2), 4302; see *Estate of Hafner* (1986) 184 Cal.App.3d 1371, 1399 [unilateral abandonment does not terminate duty of support]; see also Pen. Code, § 270a.)

The distinction between necessaries of life and common necessaries of life is discussed in *Direct Capital Corp. v. Brooks* (2017) 14 Cal.App.5th 1168, 1174-1175.  In short, "common necessaries are those that *all* families need (e.g., food, clothing, and shelter)," whereas "necessaries" depend on the economic and social circumstances of the particular marriage.  (*Ibid*.; see *In re Marriage of Stimel, supra*, 49 Cal.App.4th at pp. 994-995.)  Because Ryan and Sarah were not separated at the time Ryan used the funds in question, Ryan needed to show only that the funds were used for necessaries of life, i.e., his ordinary living expenses, to prove a community benefit.

Here, Ryan attempted to meet that burden through his testimony that he used a small portion of the missing funds to pay premiums for health insurance and possibly car insurance for Sarah and the children, and the remainder to pay his living expenses and attorney fees.  The trial court found, however, that Ryan failed to meet his burden to show a proper disposition of the missing funds.  The court found that because Ryan's testimony consisted only of conclusory assertions, unsupported by any specific documents or information, the testimony was insufficient to prove the missing funds were used to benefit the community.

Given the state of the record, with the exception of the $14,690 Ryan spent on his attorney, we see no reason to disturb the trial court's finding.  The credibility of witnesses is generally a matter for the trier of fact to resolve.  A trier of fact is free to disbelieve a witness, even an uncontradicted one, if there is a rational ground for doing so.  (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1043; accord, *Filip v. Bucurenciu* (2005) 129 Cal.App.4th 825, 836 [the court is not required to accept uncontradicted testimony where no corroborating evidence is presented]; *Ataide v. Hamilton Copper & Steel Corp.* (1991) 229 Cal.App.3d 624, 630 [uncontradicted testimony can be disregarded if it is vague or uncertain]; see also Evid. Code, § 412.)  "Consequently, the testimony of a witness which has been rejected by the trier of fact cannot be credited on appeal unless, in view of the whole record, it is clear, positive, and of such a nature that it cannot

11

rationally be disbelieved." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1204.) That is not the case here.

We are also guided by the principle that the trial court's judgment is presumed to be correct, and that we must indulge all presumptions in favor of its correctness. (*Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 769.)

Thus, on this record, we find the trial court did not abuse its discretion by concluding that Ryan's self-interested and uncorroborated testimony was insufficient to prove the missing funds were used for a community purpose. (See *In re Marriage of Valle* (1975) 53 Cal.App.3d 837, 844.)

The one exception is $14,690 of community funds that Ryan spent on his attorney. Sarah does not dispute this payment, but she argues (without citation) that "[t]hese funds are quite plainly separate debt." Our research supports a contrary conclusion. (See *In re Marriage of Lyustiger* (2009) 177 Cal.App.4th 1367, 1369, 1376-1377 [duty to support a spouse may include payment of attorney fees during the pendency of dissolution proceeding]; *In re Marriage of Pallesi* (1977) 73 Cal.App.3d 424, 427-428 [attorney fees ordered to be paid during the pendency of dissolution constitute " 'common necessaries of life' " for purposes of earning exemption claim]; *Henry v. Henry* (1960) 182 Cal.App.2d 707, 712-713 [same]; see also *In re Marriage of Green* (1989) 213 Cal.App.3d 14, 27 [public policy favors parity between spouses in their ability to obtain legal representation].) Thus, we conclude Ryan should not have been ordered to reimburse the $14,690 in community funds that Ryan proved he spent on his attorney. Accordingly, we will modify the judgment to reduce the reimbursement by this amount and affirm the judgment as modified.

## II

### *Award of Interest*

In addition to ordering Ryan to reimburse Sarah for her share of the missing community funds ($33,500), the trial court ordered Ryan to pay prejudgment interest in

the amount of $23,450.[8]  Without citation to authority, Ryan argues that requiring him to pay prejudgment interest is both unauthorized and "patently unfair."  Sarah responds that the award of prejudgment interest is authorized by Civil Code sections 3287 and 3288 and necessary to compensate her for the loss of the community funds.

We review an award of prejudgment interest for an abuse of discretion.  (*Patrick v. Alacer Corp.* (2011) 201 Cal.App.4th 1326, 1344.)  This standard of review affords considerable deference to the trial court provided it acted in accordance with the governing rules of law.  (*Faigin v. Signature Group Holdings, Inc.* (2012) 211 Cal.App.4th 726, 752.)  We presume the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise.  (*Ibid.*)

On this record, we cannot conclude the trial court abused its discretion.  We conclude, consistent with *Patrick v. Alacer Corp., supra*, 201 Cal.App.4th 1326, that the court had equitable discretion to award prejudgment interest to Sarah to compensate her for the loss of use of her share of the community property.  (*Id*. at p. 1344; see *Tufeld Corp. v. Beverly Hills Gateway, L.P.* (2022) 86 Cal.App.5th 12, 33; Gray & Boone, Complex Issues in California Family Law (2023) ch. F4, § F4.04; see also Civ. Code, § 3288.)

---

[8]    The trial court apparently calculated the amount of interest based on the rate of 10 percent per annum for a period of seven years (April 2014 to April 2021).

DISPOSITION

The judgment is modified to reduce to $52,310 ($67,000 less $14,690) the amount that Ryan is required to reimburse the community for the funds that Ryan unilaterally transferred from the parties' joint bank account; to reduce to $26,155 ($52,310 divided by two), the amount that Ryan is required to pay Sarah for her one-half share; and to reduce to $18,308.50 (10 percent of $52,310, per annum, for seven years) the amount of interest owed. As modified, the judgment is affirmed. Sarah is awarded her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

\s\

_____,

Krause, J.

We concur:

\s\

_____,

Mauro, Acting P. J.

\s\

_____,

Boulware Eurie, J.